## Case No. 7,068.

### IRONS v. MANUFACTURERS' NAT. BANK.

[6 Biss. 301; [1] 1 Thomp. Nat. Bank, Cas. 203.]

Circuit Court, N. D. Illinois. Feb., 1875.

Gardner & Schuyler, for complainant.
J. Hutchinson and Tenneys, Flower & Abercrombie, for defendant.

BLODGETT, District Judge. This is a creditor's bill, setting forth in substance that the complainant was a depositor in the Manufacturers' National Bank; that at the time the bank closed its doors in October, 1873, he had a large sum deposited there;

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

that the bank has since that time gone into voluntary liquidation, or pretended to do so; that it has withdrawn its bonds on deposit with the treasurer of the United States, and has since that time in some manner, through the agency of various officers, converted its funds, under the pretexts of paying portions or some of its debts, and that in the meantime the complainant has brought suit against the bank, and recovered judgment in this court for the amount of his debt,— something over $12,000,—issued his execution, and been unable to make anything. He charges that the officers of the bank have fraudulently applied the funds of the bank to the payment of other persons than himself; that they have made fraudulent settlements and dispositions of the property of the bank; and there is no property subject to seizure or execution which the complainant can obtain by proceeding at law, and asks for the discovery of whatever assets the bank or the officers of the bank may now have under their control belonging to the bank, and for the appointment of a receiver to take possession of these assets; and also, that the adjustments or settlements which have been made by the officers of the bank, which are fraudulent, and in violation of the provisions of the banking law under which the defendant was organized, shall be set aside and held for naught, and the property equally distributed among all the creditors alike.

The bill does not show the fact, but an exhibit filed with the bill, shows that within the last few months certain creditors of the bank have applied to the comptroller of the currency, under the provisions of the general banking law of the United States, asking that he appoint a receiver for this bank under the provisions of that law, and pursuant to it, for the purpose of winding up its affairs, and the comptroller has responded to that request by the statement, in substance, that some time in the early part of January, 1874, the bank deposited government notes with the treasurer to the amount of its circulation, and took up its bonds; and that the relations between the bank and the department of the comptroller of currency from that time on have ceased, and the comptroller now has, or claims that he has, no authority to appoint a receiver; that he has no official notice of any protest of any of the circulating notes of the bank, and thinks that he has no authority to appoint a receiver. The defendant files a general demurrer.

It would seem from an examination of the banking law, that the comptroller of the currency has no authority to appoint a receiver except in certain contingencies, such as the failure to make good a reserve, the failure to redeem circulating notes on demand, the failure to make good the capital stock, whenever the same becomes impaired, and the failure to meet certain other requirements of the banking law. Now, neither of these contingencies are charged in this bill to have occurred, and it is only in the case of such contingencies that the comptroller acquires the right to appoint a receiver.

It is claimed on the part of the defendant, and has been very strenuously and ingeniously argued, that there is no power in any court to appoint a receiver for this bank, because the delegation of the power to the comptroller of the currency to appoint a receiver in certain contingencies to wind up the affairs of the bank excludes the authority of any other tribunal or person to appoint a receiver. I have carefully examined the banking law, and the decisions of the supreme court, and those of various states made since this banking law took effect upon the various questions which have arisen, and do not find that this precise question has ever been made. But I can see nothing in the law itself, nor in the decisions of the courts upon the law, so far as they have gone, to exclude the idea that a corporation created as this is under an act of congress for certain specific purposes, does not come within the general provision of the law regulating the remedies of creditors as against this corporation as much as against any other corporation, except where there are specific provisions to meet those cases. For instance, a holder of the circulating notes of the bank, who had presented them for payment, and payment had been refused, would undoubtedly find this remedy within the special provisions of the banking law itself, because there is a specific provision meeting that case, and his remedy would undoubtedly be found in the action of the comptroller of the currency. But there are many cases like the one before us, where the bank may not have so violated any of the provisions of the banking law as to call for the appointment of a receiver by the comptroller.

The allegations in this bill are very full that this bank was insolvent at the time it closed its doors, and has been ever since; that it failed to pay its debts; that a large amount of its debts are still unpaid; and the question is, what remedy have the creditors of this bank if a court of equity cannot take on itself the administration of its affairs, where the banking law does not provide that it shall be done by the comptroller of the currency? It is true that in the case of Kennedy v. Gibson, 8 Wall. [75 U. S.] 498, the supreme court state that the provision of the banking law making the stockholders liable for the debts of the corporation to the amount of the stock held by them respectively, could not be enforced except under the action of the comptroller through a receiver appointed by him. Whether that opinion will be found to entirely express the full meaning and intention of the supreme court whenever they come to examine it in the light of future cases and facts which may be brought before it, is at least a matter of doubt. I do not feel sure that the su-

preme court will adhere to quite as broad a statement as is made in that case; but still they may. But even that does not oust the jurisdiction of a court of equity to take hold of whatever assets the bank may have aside from the personal liability of the stockholders, and administer those as it would the affairs of any insolvent corporation.

The law is well settled in this state and in the courts of the United States, that the proper remedy of a creditor against a corporation, when the assets are of such a nature that they cannot be levied upon and sold on execution, is by a proceeding in equity to marshal and distribute the assets. It is unnecessary to cite authorities upon that question. The law, I think, is as well settled as any branch of the law can be considered settled in this country.

The general banking law provides, by the fifty-second section, "that all transfers of the notes, bonds, bills of exchange, and other evidences of debt owing to any national banking association, or of deposits to its credit; or assignment of mortgages or sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion or other valuable things for its use, or for the use of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, except in the payment of its circulating notes, shall be utterly null and void." Rev. St. U. S. 1874, § 5242.

Now by the fiftieth section of the banking law it is provided in substance that, after making provision for the payment, or rather indemnification, of the government for the redemption of the circulating notes of a national bank, all the remainder of the proceeds of its assets shall be divided pro rata among its creditors, share and share alike, according to the amount due to each. And the section which I have just read makes void all payments and settlements which are made to one creditor, to the exclusion of other creditors, after the commission of an act of insolvency.

The allegations in this bill, which are confessed by the demurrer as true, show that the bank became insolvent, closed its doors, and, I think, was guilty of an act of insolvency within the meaning of the banking law—the organic act of incorporation.

It was urged by defendant's counsel that the only act of insolvency contemplated by this fifty-second section, was such an act of insolvency as authorized the comptroller to appoint a receiver, that would be merely the failure to pay its circulating notes. and that a failure to pay a depositor, or its bills of exchange, or notes, or drafts. would not be an act of insolvency.

It can hardly be possible that congress intended to give all the remedies in the banking law merely to the note-holder of these national banks, and leave depositors and general creditors entirely unprovided for. It must have been in the contemplation of congress in the enactment of this act, that these national banks could receive deposits, because they are specially, authorized to do so; that they would issue bills of exchange, and be otherwise liable to individuals and corporations, because there is express provision in various sections for payment of that class of indebtedness. And I think the term, "act of insolvency," mentioned in the fifty-second section, is clearly an act which would be an act of insolvency on the part of an individual banker; that is, the closing of the doors, refusal to pay depositors on demand, refusal to go on in the due course of business to transact its business as a bank, and discharge its liabilities to its creditors.

So that upon the allegations in this bill, which are, as I said before, admitted to be true by the demurrer, it would seem that this bank has been making preferences in direct contravention of the provision of the banking law for a year past. How far a court of equity will deem it its duty to disturb these transactions, and require repayment from parties who have received payment from the officers of the bank in the course of liquidation of its affairs, is a matter for future consideration. But it certainly furnishes the ground for the intervention of a court of equity, it seems to me, when it is made to appear that a bank is going on and paying some creditors to the exclusion of others. It was the plain intention of the banking law that all creditors should share equally, and that no preference should be allowed in favor of one creditor as against others; that the United States government, as the guarantor of the circulating notes of the bank, is the only party that is entitled to any preference whatever; that all other creditors are to share alike. And, therefore, it would seem to follow that, if a bank is not in a condition to pay all its creditors, it can only pay them pro rata,—that it has no right to pay a part in full and have others unpaid.

Entertaining these views, and without taking longer time to explain my views upon the question, it is sufficient to say that I think a case is made by the bill for an appointment of a receiver.

J. D. Harvey was accordingly appointed receiver under a bond of $100,000.