[No. 4896.]

HOTTEL, TRUSTEE, v. THE POUDRE VALLEY RESERVOIR COMPANY.

1.  Set-off and *Counter-claim—Proper Subjects.*

Where payments by a reservoir company to workmen of a contractor employed by it were made under an arrangement with the contractor, entered into before the rights of an assignee of the contractor had attached, such payments were a proper charge against both the contractor and his assignee in an action

against the company for work done by the contractor, although made after the assignment.—P. 374.

2. **Appellate Practice—Review—Findings of Fact.**

The findings of a trial court upon conflicting evidence will not be considered on appeal.—P. 375.

3. **Appellate Practice—Harmless Error—Examination of Witnesses.**

The refusal of the trial court to permit plaintiff to call as a witness the engineer of defendant company, as the company's representative for the purpose of cross-examining him, even if proper to do so under Sess. Laws 1899, p. 178, was not prejudicial error where he was actually called as a witness for both parties and subjected to a most rigid and prolonged examination, and cross-examination by counsel for plaintiff.—P. 375.

4. **Contracts—Change—Extra Expenses—Liability.**

Where, after the commencement of work under a contract, the company for whom the work was done required the contractor to do work not included in the specifications, entailing extra work, it was liable for the extra expense caused by the changes.—P. 376.

5. **Appellate Practice—Harmless Error.**

Where, in an action by a contractor and his assignee for work done by the contractor, the amount erroneously charged against the contractor on defendant's counter-claim did not exceed the amount of the judgment rendered in defendant's favor, the judgment would not be reversed on appeal by the assignee alone, as the error was harmless as to him.—P. 378.

6. **Contracts—Failure to Complete—Cost of Completing.**

Where, by the terms of a contract for work to be done for a reservoir company, the company, upon inability of the contractor to perform, reserved the right to complete the work and deduct the cost thereby incurred from the total amount to be paid the contractor, the company, upon being obliged to complete the work, was entitled to the amount it cost to finish the work; and this is true as to the assignee of the contractor, although the assignment was made prior to the completion of the work, since the assignee took subject to the rights and equities the company had against the contractor; and the value of such work cannot be fixed arbitrarily as against the assignee, but the actual cost must be proven.—P. 380.

7. **Same—Practice in Civil Actions—Evidence—Sufficiency.**

In an action by a contractor and his assignee for work done for a reservoir company prior to the contractor's abandonment of the contract, evidence reviewed, and held insufficient to sus-

tain finding of trial court as to cost of completing the work abandoned by the contractor.—P. 381.

8.　**Practice in Civil Actions—Trial by Court—Findings of Fact—Sufficiency.**

Where, in an action for work done under a contract with a reservoir company, it is necessary to examine a large mass of figures and make extended mathematical computations, specific findings of fact should be made, and the account stated showing what items were allowed to the respective parties, since in such way only can the appellate court, upon a written record, intelligently review the evidence or determine whether proper allowances have been made.—P. 382.

*Appeal from the District Court of Larimer County.*

*Hon. James E. Garrigues, Judge.*

Action by B. F. Hottel and J. A. Banning against The Poudre Valley Reservoir Company. From a judgment for defendant, plaintiff Hottel appeals. *Reversed.*

Mr. FRANK J. ANNIS, Mr. FRED W. STOW, and Mr. GEORGE W. BAILEY, for appellant.

Mr. H. N. HAYNES, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

One of the plaintiffs below, J. A. Banning, who is not a party to this appeal, entered into a written contract with the defendant reservoir company whereby, for the consideration, and in accordance with the plans and specifications therein named, he agreed to construct its ditch, which was to be about thirty-one miles long. Banning began work about the 15th of August and continued thereat until about October 18th following, when he then threw up the contract.

By a written instrument, of date October 22, he assigned, transferred and sub-let to George W. Temple & Co. all of his right, title and interest in the

contract with the defendant, which instrument contained the following:

"All work to be taken by the said Temple and Company as it exists at this date, but the said J. A. Banning hereby reserves all moneys due him from said Poudre Valley Reservoir Company for all work complete and up to and including October 22, A. D. 1902."

Three days later, on the 25th of October, Banning, being indebted in divers sums, made an assignment to B. F. Hottel, as trustee, for the benefit of his creditors, of "all his right, title and interest in and to any claims now due him from The Poudre Valley Reservoir Company for and on account of his contract entered into with the said company on the 7th day of August, A. D. 1902, and also all right, title and interest in and to any sub-contracts or assignment of the original contract with the said The Poudre Valley Reservoir Company, heretofore or hereafter to be made by said Banning, to Messrs. Temple, Young, Wells and Bell, or any other persons whomsoever, and all moneys, dividends, revenues, royalties, or per cents. of any kind whatsoever now due or to become due from said reservoir company, said sub-contractors, or said assignees of the original contract, or either of them, to said J. A. Banning. And all moneys that may become due from the company to said Banning on account of the labor hereafter to be performed by said sub-contractors, assignees, or either of them."

This assignment was accepted by Hottel on the same day, and immediately a copy and notice thereof were mailed to, and received by, defendant through its attorney, in connection with which a demand was made for a statement of the account between the contracting parties.

Under the assignment, or sub-letting, Temple &

Company completed the ditch, and upon an accounting had between them and defendant, were paid for the work. The plaintiffs, Banning and Hottel, claiming that there was a balance due them under the contract, brought this action to recover for the unpaid value of the work, reserved by Banning in the Temple assignment, and which was done by him prior to that date, and to make the amount thereof a statutory lien on the ditch.

The defendant company answered denying that there was anything due plaintiffs, and, by way of counter-claim against Banning, alleged overpayment on the contract in excess of its obligations to him to the amount of $9,943.90, for which it asked judgment. The new matter in the answer was put in issue by the replication.

Having properly refused plaintiffs' application for a jury trial, the court, without a jury and without a reference, tried the case. The findings were in favor of defendant upon the issues joined between it and Hottel, as trustee, and in favor of defendant on issues joined between it and Banning, and upon such findings the court rendered judgment for defendant against Banning in the sum of $7,964.80 and costs. Though both plaintiffs complained of the judgment, only Hottel perfected his appeal.

1. The defendant claimed, as part of its overpayment to Banning, the amounts which, under his direction given before the Hottel assignment, it paid on a large number of time-checks and orders which he issued to the holders for labor they theretofore performed for him under the contract. There is evidence tending to show, and in accordance with which it is clear the court found, that all of such time-checks or orders signed by Banning, though some of them bore date subsequent to October 25, were paid by defendant under Banning's orders, given before the

assignment of October 25, and which defendant then accepted. This constituted an equitable assignment by Banning to his respective creditors.

The correctness of the abstract proposition of law for which plaintiff contends may be conceded, namely, that after the assignment by Banning of all his rights and demands against the company on the 25th of October, of which defendant company had notice, payment by the company to Banning, or any one for him, thereafter cannot be used as evidence of payment, or invoked as a defense against the assignee. But its applicability, under the facts of this case, is not apparent; for the court found, upon conflicting evidence, that payment of these workmen was under an arrangement between Banning and defendant, made before the rights of the assignee, Hottel, attached. It is the law that the assignee of a chose in action takes only the rights which the assignor had. Certainly, if the assignment had not been made, payments by defendant of Banning's laborers, according to his directions, would be a proper charge against Banning; so they are against his assignee.

Plaintiff further insists that the evidence does not show that some of the time-checks were paid by defendant, and that there was not sufficient proof that Banning signed or authorized other time-checks, which were charged against his account. The evidence as to these issues was conflicting and we will not disturb the finding of the court upon them. The allowance to defendant for paying these time-checks will stand.

2. Plaintiffs called, as a witness, defendant's engineer, Page, as its representative, and proposed to cross-examine him under our statute, which gives to one party to a suit the privilege or right to call the other party, his manager, superintendent, etc.,

for the purpose of cross-examination. The court refused to grant the request, and this ruling is assigned as error.

Whether under the statute (Session Laws 1899, p. 178) Page is such an officer of defendant company as to be subject to cross-examination we need not decide, for he was called both as a witness for plaintiffs and defendant, and subjected to most rigid and prolonged examination and cross-examination by counsel for plaintiffs. The error, therefore, if any, in this ruling of the court, was not prejudicial to them.

3. The following was one of the specifications of the contract: ''The top width of canal embankment shall be eight feet on the right, or lower side, and six feet on the left, unless otherwise indicated on slope stakes, and the side slopes shall be two and one-half to one, unless otherwise ordered by the engineer.''

The parties apparently are in accord that defendant's engineer was empowered by the contract to change the specifications either as to the width of the embankment or the slopes of the sides of the ditch. They agree that he made no change as to such width. But, it seems that he did make a change as to the slope of the upper side of the ditch from two and one-half to one, as specified in the contract, to one to one. The engineer also required Banning to put all the dirt excavated, in excess of what was necessary to make the embankments, on one side of the ditch only, whereas, according to his contention, he had the right, at his pleasure, to put it upon either side, or upon both sides. Banning's evidence tended to show that after he began work upon the ditch, and had nearly completed a mile or more of it with the slope of the upper side two and one-half to one, as required by the foregoing specification, the

engineer, over his protest, directed him to make the slope one to one. While recognizing the right of the engineer to make the change, Banning and his assignee claim that the extra cost which the same occasioned, after Banning started the work upon the basis of the specification as it was written in the contract, should be paid for by defendant. They also claim that to deposit the "waste" on one side only of the ditch, instead of upon both sides, as might be done under the specifications, entailed an extra expense for which allowance should be made.

We think plaintiffs' construction of the contract is right, and if the changes made by the engineer added to the cost, as is practically admitted, defendant should pay it. We are inclined to the view that the evidence greatly preponderates in favor of plaintiffs as to the time of the change of slope, and that it was not ordered by the engineer until the contractor had been working on the ditch for about a month, and that the requirement to put the waste on one side necessarily entailed extra cost. Indeed, there is no substantial legal evidence to the contrary. The court disallowed the claim as to both of these items, whether upon the law or facts, the record does not show. We think, however, that in this it was wrong, not only as a matter of law, but under the evidence. It is true that the total amount which is claimed by the assignee under these two items would not, of itself, be sufficient to overcome the amount of the judgment awarded to defendant against Banning on its counter-claim; and if this were the only error committed by the court, we would not reverse this judgment on the assignee's appeal, as that would be a vain thing. While Banning, if he had perfected his appeal, might complain of any error, regardless of the amount, in any item of allowance, to entitle Hottel to a reversal, he must affirmatively show that

the court erroneously charged against Banning more than the amount of the judgment which was rendered against Banning in defendant's favor. But, as will be seen, other errors were committed by the court upon another branch of the case, for which, on the basis just indicated, a reversal should be had.

4. When Banning abandoned the contract, only a small part of the construction work had been done, and it is probably true that but little, if any part, of the ditch was entirely finished strictly in accordance with the specifications. Most of the work necessary to complete that part of the ditch which Banning began but left unfinished was done by Temple & Company, but some of it by the company itself.

About the time Banning assigned, or sub-let to Temple & Company, possibly both before and after an arrangement was made—at least, the court so found upon practically uncontradicted evidence—between Banning, Temple & Company, and defendant, whereby Temple & Company agreed to complete, and, in fact, completed, certain parts of Banning's unfinished work. It was done under what the parties call "force" account; that is, compensation therefor was not in accordance with the prices specified in the contract, but Temple & Company hired men and teams to do the work by the day, and paid therefor on the basis of the time they were employed, and by an agreement between Temple & Company and defendant, to which neither Banning nor Hottel was a party, and concerning which neither was consulted, such "force" account was paid by defendant to Temple & Company in the sum they fixed as between themselves. It aggregated a little more than $9,000. Afterwards it seems to have been reduced to $7,707.30, and it was charged on defendant's books against Banning on the account between them, as a proper item to be deducted against any balance due

him for work which he actually did before he abandoned the contract. The "force" account for the work done by the company itself through its foreman was estimated by defendant at about $1,300; the two so-called "force" items aggregating more than $10,000, or, after the above reduction, to about $9,000.

Plaintiff assignee vigorously contests the allowance of these two items, which the trial court made to defendant, against Banning. It is said, first, that after Banning assigned to Hottel all claims accruing to him under the contract for work which he had theretofore done, any arrangement affecting Hottel's rights that was made between Banning, assignor, and defendant, Temple & Company, or any one else, would not be binding against the assignee. At considerable length defendant's counsel argues that the language of Banning's assignment to Temple & Company, first above quoted, is ambiguous; that there is a latent ambiguity therein which justifies explanatory oral evidence; and, further, that this assignment was not intended to embrace the entire contract between the parties thereto; and that under the evidence produced, the contract between Banning, defendant, and Temple & Company for finishing the work was not only shown to be valid as to the assignee, but was clearly proved, namely, that Temple & Company thereby were authorized to finish the uncompleted work of Banning, which they did, and the amount thereof, as determined by defendant and Temple & Company, was, with Banning's consent, made a proper charge against him, as well as against Hottel.

We do not find it necessary to determine whether the Banning assignment to Temple & Company contemplated and justified the making of such contract, or whether it was, in fact, made as claimed,

because it was expressly provided in Banning's contract with defendant that in case of his inability to complete the ditch according to its terms, defendant might, when such condition became patent, contract for such completion and deduct the costs thereby incurred from the total amount to be paid Banning for such construction in accordance with, and upon the basis of, the specifications. Under this clause, when Banning abandoned the contract, defendant company undoubtedly had the right to complete the work itself, or by its contractee, or in both ways, and deduct the cost thereof from the amount to which Banning would be entitled had he, himself, fully complied with, and performed, the contract; and if such cost was greater than such balance, found on the accounting to be due plaintiff, defendant was entitled to judgment against Banning for the excess.

This is so, notwithstanding Banning assigned to Hottel whatever was coming to him as a balance from the company for the work which he actually did, if anything was due, for Hottel took subject to whatever rights or equities defendant had as against Banning. It makes no difference, therefore, whether Banning and Hottel approved of, or ratified, the contract under which, or sanctioned the method by which, the finishing work was done, on "force" account. Defendant had the option, under the contract, to finish the work, and exercised such option.

It is, however, true that defendant could not arbitrarily, or by mere agreement with Temple & Company, bind Hottel as to the costs of such finishing, and we are not now concerned with Banning. In this action, so far as it affects the rights of Hottel, it was necessary for defendant to prove by competent and sufficient evidence what it cost to do this finishing work. This was not necessarily the amount which it paid Temple & Company therefor, or the

amount which was entered upon its books as the cost thereof, or of its own "force" account. To the evidence, then, we must look to see if such burden has been discharged.

A careful examination of the record shows that there was not sufficient legal evidence before the court upon which to sustain its apparent finding that these two "force" accounts, or either of them, were just and true charges against Hottel. The witnesses who spoke to this point knew nothing of their own knowledge as to the correctness of these items, or whether they represented the actual cost of the labor. The witness Page, defendant's engineer, based his estimate of these items upon information and data which were furnished him by others connected with defendant company. Those who kept the time of the "force" accounts were not produced, and we do not find any substantial data or basis by which they can be ascertained. From the evidence we think it would be impossible to determine what the actual cost was. It appears that these two items were entered in the books of the company as charges against Banning, but it is not made to appear who made the entries, or upon what information they were made. The only evidence, if it can be called evidence at all, by which the two "force" accounts were sought to be proved, consisted of mere conclusions of witnesses from data which the witnesses did not gather, and of which they had no personal knowledge, and upon purely hearsay evidence and evidence which, in any event, was merely secondary, and no reason given why the best, or primary, evidence was not produced. We are unable to find anywhere in the record any sufficient or legal evidence to sustain this allowance. Specific objections to the evidence that was admitted were made upon these, and other, grounds by plaintiffs at the time, and

thereby the court's attention was expressly called to its defects. Indeed, the court itself, in receiving this class of evidence, expressed a doubt not only as to its admissibility, but its sufficiency. We cannot sustain the apparent findings of the trial court based upon this kind of evidence, and there is none other in the record on which they can rest. The allowance of these two items, aggregating about $9,000, of itself is sufficient to reverse the judgment, for if they were erroneously made as just items of debit against plaintiff, as they were, the total award to defendant would be entirely wiped out, and the account would show a balance in favor of plaintiff, for which judgment should have been rendered.

The evidence shows that during the progress of the work which Banning actually did before he abandoned the contract, different payments were made to him by defendant. The finding of the trial court of the balance due him for such work, or, as counsel express it, the "yardage" to which he was entitled, was not expressed in figures, nor does the record anywhere show the amount thereof. Indeed, the only figures which are mentioned in the findings are the balance which the court found to be due to Banning from the defendant, and for which judgment was given.

In his findings, or opinion, the trial judge stated that it made but little difference whether he followed the figures and computations as to the "yardage" as made by plaintiff's engineers or defendant's engineers, because in net results they differ but little. To ascertain such amount it was necessary to examine with care a large mass of figures and make extended mathematical computations. It is entirely appropriate to say that this case might well, and evidently as the trial court discovered before the hearing closed, should, have been referred to a competent

engineer or accountant as referee. But whether the trial court itself hears the evidence or makes a reference in a case like this, specific findings of fact should be made and the account stated showing what items are allowed to the respective parties. Only by so doing can an appellate court, upon a written record, intelligently review the evidence, or determine whether proper allowances are made. Good practice requires that such course be pursued.—*Wells v. Baker,* 38 Colo. 149; *Macintosh v. Great Western Ry. Co.,* W. D. G. J. & S. 443, 66 Eng. Chancery 443; *Herrick v. Belknap, etc., R. R. Co.,* 27 Vt. 673; *Reed v. Jones,* 15 Wis. 40; 1 Enc. Pl. & Pr. 104; 17 Enc. Pl. & Pr. 1037, *et seq.*

Plaintiff apparently is dissatisfied with the finding as to the "yardage," and the assignment of errors might be considered as covering objections to the same, and had the point been properly presented here, and had plaintiffs at the trial seasonably requested the court to state the account and make special findings, it would accord with good practice, without entering upon an investigation, to reverse the case with instructions to state the account. And this court might, even in the absence of objection by an appellant here, and such request below, decline to assume such burdens which should have been performed by the trial court.

If the trial court has stated the balance due Banning for "yardage," we would give specific instructions that the same allowance should be made upon another hearing. The same judge, however, who tried this case is still upon the bench, and if he preside at the new hearing he is authorized to do so. The evidence makes a large volume, and the parties will not be required to re-take the evidence embodied in the bill of exceptions, but the same as it appears therein may be used by them, so far as it is compe-

tent and admissible, upon the new trial, with the privilege to each to introduce such other competent testimony as they may have to offer.

There should be allowed plaintiff for "yardage," and, in addition, for the extra cost, if any, of putting the waste on one side only of the ditch, and that occasioned by changing the slope of the upper side of the ditch, as required by defendant's engineer, a reasonable sum. The defendant is entitled to credits for the reasonable cost incurred by it in finishing Banning's uncompleted work on the "force" accounts, proof of which must be made, not as was attempted before, but by the best legal and competent evidence which the parties can produce. We must not be understood as saying that the cost of this work is not equal to the amounts which defendant paid Temple & Company therefor, added to its own "force" account, and which the trial court apparently allowed. We express no opinion whatever with respect to the same. Defendant is also entitled to an allowance for time-checks, or orders, which it paid, as heretofore allowed by the court.

Possibly the trial court may find it more expedient and satisfactory to hear and decide this cause without a reference, but whether it does so or makes a reference, special findings with respect to these various items of account should be made and the account stated so that, in case either of the parties is dissatisfied with it and should bring the case here again for review, this court would be able more satisfactorily to itself and the parties to review the rulings and special findings of fact of the trial court.

Judgment reversed and cause remanded, with instructions to proceed in case of another hearing in accordance with the views expressed in this opinion.

*Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.