[No. 6202.]

## GROUT V. FIRST NATIONAL BANK OF GRAND JUNCTION ET AL.

1. **National Bank—Jurisdiction of State Courts**—Where a National Bank has transferred its business and is no longer a going concern, but has assets largely exceeding its liabilities and has not committed any act which would authorize the comptroller of the currency to appoint a receiver, but the directors have made no account to its stockholders, and are administering its assets with a view to absorb them, to the prejudice of the minority stockholders, a state court may assume jurisdiction to compel an account of its affairs, and may appoint a receiver to control and dispose of the corporate property for the benefit of the stockholders.—(563)

2. **Receiver—Premature Discharge**—Where it appears by the report of the receiver of a bank that some of the directors are indebted to the bank in sums exceeding the distributive share of its assets to which they would otherwise be entitled, where no account has been stated by the referee in the cause, as prayed for in the bill, and no finding made upon charges impeaching the conduct of such directors, it is error to dismiss the action and discharge the receiver.—(566-568)

3. **Corporations — Rights of Stockholders** — Where the directors of a bank owning the majority of the stock have made no account of its affairs, though the bank has long been out of business, and are administering its assets with a view to absorb them, or gain preferences over the minority stockholders, and some of them are insolvent and some of them are indebted to the bank in sums exceeding their proper share of the assets, upon distribution made, a single stockholder, sueing for himself and all others similarly situated, may bring an action against the corporation for an account, and for distribution of the surplus after payment of its liabilities.—(563)

4. **Jurisdiction—Consent Conferring**—Defendant having acquiesced in the appointment of a receiver, will not be heard to afterwards object to the jurisdiction of the court.—(564)

5. **Referee—Duties —** Where the complaint against the corporation and its officers charges the directors with fraud, mismanagement and neglect of duty, the referee should be required to find upon these issues.—(565)

6. **Account—Statement of**—Where the referee appointed to take an account fails to state the account in the manner required

by good practice, the court should refer the matter with proper directions, or should itself state the account, where the record contains sufficient data.—(566, 567)

7. **Equity Causes—Evidence—Practice**—Upon reversal of a decree dismissing an action brought to obtain an accounting of the affairs of a corporation, and distribution of its assets, the court gave leave to the parties to use, upon a new trial, the evidence already taken, and to take additional evidence. —(568)

*Appeal from Mesa District Court*—Hon. THERON STEVENS, Judge.

Messrs. LOGAN & GREER and Messrs. HAYT, DAWSON & WRIGHT for appellant.

Messrs. WHEELER & WEISER and Mr. R. D. THOMPSON for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Action by a stockholder of a national bank against the corporation and its officers for an accounting. From a judgment dismissing the action, plaintiff appeals. From the complaint, it appears that the bank was organized under the banking laws of the United States. It ceased doing a banking business in 1897. It was not insolvent, practically all its obligations to depositors and other persons except stockholders having been discharged. It voluntarily went into liquidation, after having transferred its banking business to a bank organized under the laws of Colorado. In the course of its active business it acquired real estate in this and other states which it still owns and from which rentals have been received. The present officers and directors are, and at all times have been, in control of the bank and are the holders of a majority of its capital stock. Without consent or knowledge on the part of the plaintiff, they have, at various times, sold and conveyed to the bank certain of the real estate now held by

it.   When the bank closed out its business, it had accumulated a surplus of $10,000.00 as profits, no part of which has been paid to the plaintiff or other minority stockholders.   The bank, not being indebted to any one, except small sums which can be paid out of its assets, holds this property and the moneys received from rentals and other sources for the benefit of its stockholders, and no accounting for the same or distribution of it to them has ever been had, though requested.   All of the directors have removed from Grand Junction, the home of the bank, either to other states, or to other places in this state, except the vice-president, Miller, and one other, who alone were in Grand Junction at the time the action was brought.   Before beginning suit, plaintiff applied to Miller for leave to inspect the books and accounts of the bank, and permission was given him to do so; but, owing to the manner in which the books were kept, it was impossible therefrom for him to ascertain the true condition of the bank, or how its accounts stood, or what business had, as a matter of fact, been transacted by it or by directors after the time it ceased doing business; that the bank and its directors have, since its doors were closed, sold some of the real estate which it then owned, and no accounting thereof has ever been made; that the directors are insolvent and are individually liable to the bank in large sums of money, and are about to dispose of some of its present holdings of real estate and wrongfully apply the proceeds thereof to the payment of their individual debts to the bank; that the bank has no responsible head at Grand Junction; that its business and affairs are being neglected, and that unless relief is granted to the plaintiff, his rights as a stockholder will be jeopardized and lost; that the interests of plaintiff and other minority stockholders, in whose behalf, as well as his own, this action

is brought, can be protected only by disposing of the corporate property, the bank being no longer a going concern, and that, in the *interim*, a receiver should be appointed to take possession of its books and all its property, collecting rents, and credits, and selling the property, and applying all the proceeds under the order of the court for the benefit of the stockholders; that an accounting which plaintiff has demanded, but which has wrongfully been denied, should be had by the bank and the officers, and that the directors be enjoined from selling or otherwise disposing of the bank's property, or interfering with the receiver.

Upon the filing of the complaint, a notice was served upon the defendant bank, and its vice-president, of an application for the appointment of a receiver, together with supporting affidavits, and at the time noted for the hearing all the defendants appeared by counsel and demurred to the complaint upon the grounds that plaintiff has no legal capacity to sue as a stockholder, that the complaint does not state a cause of action, and that the court is without jurisdiction of the subject-matter. Defendants did not ask leave to file an answer before the hearing of this application, but relied upon their demurrer; and when it was overruled, no request was made by them for leave to answer or file counter-affidavits before the application was determined. On the contrary, defendants then relied solely upon their demurrer. After it was overruled, the court appointed a receiver, who at once entered upon the performance of his duties. Afterwards defendants answered, denying the material allegations of the complaint, and no attempt to have the order appointing a receiver vacated has ever been made, and he continued to act in that capacity and managed and disposed of the bank property till the action was dismissed. Upon due appli-

cation, the court entered an order authorizing the receiver to make sale of the bank's property, to which no objection was made by defendants, and all the real estate has been sold thereunder.  Upon the request of the receiver, an expert accountant was appointed as referee to take evidence upon the merits of the case, and defendants, by their counsel, stipulated that the order might be made.  During the progress of the case, the receiver and the referee were allowed compensation by the court, apparently by consent of counsel upon both sides, to be paid out of the fund realized by that officer from the sale of the bank's property and collections made.  Defendants' counsel himself presented, and had allowed against the bank, a bill for his professional services, which were taxed against "the estate," and all these allowances were paid by the receiver out of the receiver's fund.

The referee proceeded to take the evidence offered, and at its close filed his report with the court, to which plaintiff's counsel filed exceptions, which have been treated by the parties as a motion for new trial.  This motion was undisposed of for many months; but plaintiff, under the facts, is not to be held responsible or made to suffer for the delay. When it was heard, his exceptions were overruled and the report approved.  A final award of compensation to the referee for his services was made, to be paid by the receiver out of the fund collected by him, while the receiver's own official compensation was ordered to be paid by the plaintiff in the action. Defendants made a motion to dismiss the action, which was granted, and all the costs, except those theretofore allowed by the court and paid by the receiver, were taxed to plaintiff, and the receiver was ordered to turn over all the property, or proceeds of any property which had come into his hands as receiver since his appointment, to the defendant bank,

(36)

except such moneys as the receiver had paid out upon the order of the court. Certain witness fees were taxed as costs, and were required to be paid by the defendant bank, while the other costs mentioned were taxed to plaintiff. As former orders of the court had apparently made these allowances, or some of them, a charge upon the receiver's fund, and such application of the fund had been made, defendants were given judgment and execution against plaintiff therefor, and for the costs taxed directly against him.

The principal question for decision is whether the court had jurisdiction of the cause and power to appoint the receiver. Defendants contend that the district court of Mesa county was without jurisdiction of the subject-matter of the action, because the bank, being organized under the banking laws of the United States, is not subject to the control of state tribunals, and that a receiver for a national bank can be appointed only by the comptroller of the currency. It is to be borne in mind that the bank was not a going concern. Neither was it insolvent. It owed only a small debt, which it could readily pay out of its assets, leaving a considerable sum for distribution to its shareholders. It had ceased doing business as a bank and had gone into voluntary liquidation. The only persons who had any claim upon its assets, with the exception noted, were the stockholders. The bank held this property as a trust fund for their benefit, and the directors in office, in the capacity of trustees, were obliged so to account to the beneficiaries. The acts charged in the complaint against the directors were not such as would authorize the comptroller of the currency, under the federal statutes, to appoint a receiver. The law is not as defendants contend in a case of this kind. As to those matters specified by the federal bank acts as authorizing the comptroller to appoint a receiver

for a national bank, his jurisdiction is exclusive. But in other contingencies a court of equity, federal or state, with proper parties before it, and in a proper case, has jurisdiction of a national bank and the directors thereof, to compel them to observe their obligations to their stockholders, and has power to appoint a receiver. One of the early cases is *Irons v. Manufacturers' National Bank,* 6 Biss. 301, which, as to jurisdiction of a court of equity over a national bank, was affirmed by the Supreme Court of the United States in *Richmond v. Irons,* 121 U. S. 27. A very satisfactory and elaborate discussion of the general subject, in line with our conclusion, is the opinion of Sanborn, Circuit Judge, in *King v. Pomeroy,* 58 U. S. Cir. Ct. App. 209. See, also, *Cogswell v. National Bank,* 76 Conn. 252; *Harvey v. Lord,* 11 Bissell 144; *Elwood v. National Bank,* 41 Kan. 475; *Merchants' and Planters' National Bank v. Trustees, etc.,* 63 Ga. 549; and *Watkins v. National Bank,* 51 Kan. 254; High on Receivers (3rd ed.) 362; 2 Bolles' Modern Law of Banking 813; 2 Morse on Banking, Part II, § 146.

Plaintiff had the legal capacity to bring this action. The general rule is, that a corporation should sue in its own name to protect corporate interests. The complaint, however, alleges that the defendant directors held a majority of the stock, and the charges of misconduct are against this majority. It would be a useless thing for plaintiff to ask the directors to have the bank itself, controlled as it was by them, institute this action. In that contingency they would virtually be both plaintiffs and defendants, and no relief would be likely to come to a complaining minority. If it be true, as the complaint alleges, that defendants were derelict in duty and were seeking to obtain a preference for themselves as against the minority stockholders in the disposi-

tion of the proceeds from the sales of the bank's property, and if the managing directors were likely to squander the bank's assets and refused to account to plaintiff and the minority stockholders for their action, the case, as made by the complaint, was one of which a court of equity has jurisdiction, and likewise power to appoint a receiver in the *interim* to hold, take charge and dispose of the bank's property for the benefit of its stockholders. This was not an application for a dissolution of the corporation, and the case cited by defendants, *People v. District Court,* 33 Colo. 293, is not in point. The bank was not a going concern. It had already gone into voluntary liquidation. The object of the action was not to forfeit the bank's charter or dissolve it as a corporation, but the chief object was to have an accounting, and, meanwhile, and as incidental thereto, to secure through a receiver, a proper management and disposition of its property and to conserve it for the benefit of its stockholders and prevent the directors from mismanaging its affairs and appropriating to themselves the proceeds of the sale of its property.

Besides, defendants virtually acquiesced in the appointment of a receiver when, at his request, they consented to the appointment of a referee to take testimony in the action. So, also, when they stipulated for the sale of the property by the receiver and in other respects consented to his management of the bank's property. The point made by them that these acts of consent and acquiescence upon their part are not binding because jurisdiction of the subject-matter cannot be conferred by consent, is without merit. The court unquestionably, as we have already said, had jurisdiction of the subject-matter, and defendants' acquiescence estops them to complain of any alleged irregularity in the appointment of a receiver. We are clearly of the opinion that the complaint

states a cause of action, that the court had jurisdiction of the subject-matter, and the receiver was properly appointed.

Plaintiff's objection to the report of the referee is not so much to the findings made by that officer and approved by the court as it is to its incompleteness and failure to find upon all the issues, particularly a failure to state the account between the parties, which was the main object of the action and was expressly prayed in the complaint. This defect in the referee's report was specifically called to the court's attention by plaintiff's objection, on motion for a new trial, in overruling which the court virtually approved the imperfect and incomplete report of its officer. An examination of the evidence discloses that there was sufficient data therein upon which the referee might have made his findings complete in accordance with plaintiff's request therefor. He did not do so. When plaintiff, as he did, called this matter to the court's attention, it should have re-referred the matter to the referee with instructions to make findings upon all material issues and to state the account between the parties, or should itself have made the investigation and modified the report and made it complete in these respects and stated the account. The allegations of the complaint hereinabove summarized contain grave charges of mismanagement and fraudulent conduct upon the part of the directors of the bank. There were five directors. The evidence discloses that the president and cashier were largely indebted to the bank, that they were insolvent, and that a third director, son of the president, while he held some of the stock in his own name, in fact did not own it, but that it belonged to his father, the president. The evidence tended to show, and the referee might have found—and, indeed, there can be but little doubt about it—that the directors

were not giving proper attention to their official duties, but were either mismanaging or neglecting the trust confided to them. Only two of the five lived in Grand Junction. They had given no attention whatever to plaintiff's demand for an accounting, and their conduct showed an indifference and disregard of their duties to the minority stockholders which made them unfit longer to have control and management of the corporate property. These facts are sufficiently shown by the facts and circumstances in evidence, and cannot be seriously questioned. The motive and intent which characterized the directors' conduct was said in the complaint to be fraudulent and wrongful. The report of the referee is altogether silent with respect to such charge, and it should have been definite upon this point and have made a finding one way or the other, as plaintiff requested. In short, the referee's findings, which were approved by the court, are so indefinite that no final decree should, or justly could, have been made upon the same as basis. The record presents a case where issues of fact sent for trial to a referee were only partially tried, some of the most important ones—those relating to fraud and mismanagement and inattention on the part of the directors to their duties with respect to the minority stockholders—were entirely ignored in the report, though there was sufficient evidence touching the same to support a specific finding thereon. This is what the plaintiff asked to have done, but the court refused his request. In *Wells v. Baker,* 38 Colo. 149, and *Hottel v. Poudre Valley Reservoir Co.,* 41 Colo. 370, 382, it was said that, in a case like this, it was the duty of the trial court itself, or by a referee, to make specific findings and state the account between the parties; otherwise a court of review could not and would not, for the purpose of determining the rights of the parties,

search the record for itself to determine the status of the account on which to render judgment. It appears also in the record that the receiver made a report to the court, whether based upon that of the referee or upon his own investigation is not quite clear, that some of the majority directors of the bank were largely indebted to the bank, and in a sum in excess of the distributive share to which otherwise they would be entitled out of the proceeds of a sale of the bank's property. The referee's report being in the state mentioned, and the receiver having in his report to the court shown the existence of a state of facts which made it highly improper to trust the board of directors with the management of the bank's property, it was clearly wrong for the court, even on the face of the showing before it, to dismiss the action and to order the receiver to turn over what remained in his hands of the funds and property of the bank to the bank. This was equivalent to putting the corporate property in the hands of a board of directors which was incompetent, or which had shown itself, in exercising its powers, neglectful of the interests of stockholders other than themselves.

In dismissing the action and as part of its final judgment or decree, the court taxed as costs to be paid out of the fund collected by the receiver, a part of the compensation allowed the referee and certain witnesses and experts; and other costs, expenses and commissions of the receiver and others were taxed against plaintiff. Although this court has held that where final judgment goes against the plaintiff who has procured the appointment of a receiver, the costs and expenses incurred by him in managing the property may be taxed against the plaintiff where there is no receiver's fund applicable thereto, and while there are conflicting decisions on taxation of costs of a receivership, wrongfully secured, or where the

plaintiff ultimately fails (Beach, on Receivers, Anderson's Ed., § 119), it does not necessarily follow that all such costs should always be taxed to plaintiff in every case where the defendant prevails. It is impossible to determine upon what principle the court proceeded in making the distinction which it did in the taxation of costs and expenses in this case. It may be that, on the final hearing, the court not only dismissed the action but taxed the bulk of the costs and expenses to the plaintiff, because it reached the conclusion, different from that which it entertained when the application for a receiver was made, that it had not jurisdiction of the subject-matter and was without power to appoint a receiver. If such was the ground upon which the court proceeded, it was wrong, as appears from our views expressed in the opinion upon that branch of the case. On the other hand, it may be that the court taxed the costs to the plaintiff solely because, in its view, he failed to prove his case. But it is idle to speculate about this, for, as we have already seen, the court should not have proceeded to final judgment or taxed the costs until the findings upon all the material issues were made and the account between the parties stated, either by the referee or by the court upon its own independent judgment.

The judgment must be reversed and the cause remanded for further proceedings in accordance with the views herein expressed. In the event of a new trial, the evidence already taken by the respective parties may be used and read, and they may take such additional evidence upon the issues as they see fit.                    *Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.

Decided March 7, A. D. 1910; rehearing denied November 14, A. D. 1910.