McClelland v. Merchants and Miners National Bank of Idaho Springs, et al.

No. 10,888.

Bottom v. Merchants and Miners National Bank of Idaho Springs, et al.

No. 10,889.

Bank of Georgetown v. Merchants and Miners National Bank of Idaho Springs, et al.

No. 10,890.

Daniels and Fisher Stores Co. v. Merchants and Miners National Bank of Idaho Springs, et al.

Decided May 4, 1925.   Rehearing denied June 1, 1925.

Proceeding involving the distribution of assets of bank. Judgment for judgment creditors as against assignee of stock.

*Reversed.*

1. BANKS AND BANKING—*Stock Transfer—Statutes.* Transfers of stock in national banking corporations are to be made in the manner prescribed by federal, and not state statutes.

2. *Voluntary Liquidation—Liability of Stockholders.* When a national bank adopts the policy of voluntary liquidation the liability of stockholders to the bank is fixed as of that date, and a stockholder cannot thereafter transfer his stock and thereby avoid his liability thereon.

3. *Voluntary Liquidation—Assignment of Stock.* While a stockholder in a national bank may make an equitable assignment of his stock, his status of stockholder with its attendant liabilities remains unchanged from the date the bank goes into voluntary liquidation.

4. *Voluntary Liquidation—Lien of Bank.* A national bank going into voluntary liquidation has a lien on dividends in the hands of its receiver, and may properly set off dividends accruing on the shares of a stockholder against his indebtedness to the bank.

5. TRUSTS—*Distribution of Fund.* When a person entitled to share in the distribution of a trust fund is also indebted to the fund and is insolvent, his indebtedness may, in equity, be set off against his distributive share.

6. BANKS AND BANKING—*Assignment of Stock—Status of Pledgee.* As against a judgment creditor purchasing debtor's shares of stock in a national bank in process of liquidation, prior pledgee by assignment and delivery of the stock during liquidation, held to acquire all rights of assignor, subject to equitable claims of the bank.

*Error to the District Court of Clear Creek County, Hon. Samuel W. Johnson, Judge.*

Mr. B. F. REED, Mr. ROBERT W. STEELE, JR., Mr. JOHN HORNE CHILDS, Mr. JACOB L. SHERMAN, Messrs. PERSHING,

Nye, Fry & Tallmadge, Mr. Lewis A. Dick, for plaintiffs in error.

Messrs. Sabin & McGlashan, for defendants in error.

*Department Two.*

Mr. Justice Whitford delivered the opinion of the court.

In 1918 the Merchants and Miners National Bank of Idaho Springs went into voluntary liquidation in the manner provided by the laws of the United States. The plaintiff in error, George E. McClelland, and members of his family, owned a majority of the 500 shares of the capital stock of the bank, 242 shares of which stood in his name on the books of the bank at the time it ceased to do business. McClelland was its president and principal stockholder. The First National Bank of Idaho Springs assumed the obligations of the Merchants and Miners National Bank, took over $130,000 of its deposits and assets, paid all of its depositors, and thereupon the directors appointed a liquidating agent to take charge and collect its remaining assets and distribute the proceeds among its stockholders. McClelland was indebted to the bank and was admittedly insolvent. The assets of the bank were not being faithfully collected or distributed. In May, 1920, the minority stockholders applied to the district court for the appointment of a receiver. The proceedings resulted in the appointment of J. W. B. Smith as receiver, who took possession and proceeded to collect the assets of the bank and instituted suit against the plaintiff in error McClelland, and thereafter recovered a judgment against him for $5,754.54. During the time the bank was in process of liquidation, and after it had ceased to do business and prior to the appointment of the receiver, McClelland pledged all of his 242 shares of stock to secure certain debts due from him to his creditors. Each of

the plaintiffs in error were his pledgees of his stock. These pledges of stock were made by assigning the certificates in blank before delivery. No memorandum of these transactions was made on the books of the bank in the manner required by the statutes of the state of Colorado for pledging corporate stock.

In May, 1922, the receiver made his first report, in which he reported that he had $5,000 available for distribution, and asked for an order directing him to distribute a dividend of ten per cent to the stockholders, and that he be authorized to apply the dividends on the shares appearing on the books of the bank in the name of McClelland on the judgment of $5,754.50 obtained by the receiver against McClelland. Upon the filing of the report the court made an order requiring the receiver to publish notice to all parties interested in the distribution of dividends, and that a copy of the notice be mailed to all parties, including the stockholders of the bank, of the hearing of the report. Each of the plaintiffs in error were notified. The plaintiff in error the Daniels & Fisher Stores Company alone appeared at the hearing and opposed the approval of the receiver's report and demanded a pro rata share of the dividends as represented by the stock held by it as pledgee. None of the other plaintiffs in error, as pledgees, appeared at this hearing. The court approved the report of the receiver and ordered that none of the pledgees of the McClelland stock should receive any portion of the dividends.

It appears that defendant in error Leahey as executor, obtained two judgments against McClelland, in the county court of Clear Creek county, and caused an execution to be levied upon all of the bank stock standing in the name of McClelland. Leahey became the purchaser at the execution sale of the McClelland stock and received a certificate of purchase from the sheriff, and thereafter filed a petition in the receivership proceeding, praying for a decree adjudging him to be the owner of the shares purchased by him under the execution proceeding, and

that the receiver be required to pay to him all future dividends, as the legal owner.

In April, 1923, plaintiffs in error McClelland and Bottom, and later plaintiffs in error the Bank of Georgetown and the Daniels & Fisher Stores Company, filed their separate petitions in the receivership proceedings, averring their right to dividends, as pledgees, and alleging a superior right thereto to any claims of Leahey, and prayed for an order directing the receiver to distribute to each of them respectively, as pledgees, their pro rata share of all dividends and to set aside the prior order of the court, as invalid.

On May 2, 1923, the receiver filed his second report, and asked for an order of the court directing him, as receiver, to fully satisfy the McClelland judgment out of the accumulated dividends in his hands. The report of the receiver and the several petitions of the plaintiffs in error and the petition of Leahey were heard together, which resulted in judgments against the plaintiffs in error and in favor of Leahey, as the legal owner of the 242 shares standing in the name of McClelland, and directing the receiver, after satisfying the McClelland judgment, to pay to Leahey all future dividends accruing on the McClelland stock.

Each of the plaintiffs in error are here on four separate writs of error. By leave of court these writs of error are being prosecuted to the four judgment orders on one record, one set of abstracts and briefs, and were orally argued as one case.

Counsel for defendants in error contend that the pledges of stock by McClelland, having been made after the bank ceased to function as such, and while it was in process of voluntary liquidation, the statutes of the state of Colorado were controlling in the transfer of stock, and that the pledges made to plaintiffs in error were invalid, under section 2268, C. L. 1921, which in substance provides that no pledges of corporate stock shall be valid for any purpose, unless a memorandum be made upon the books of

the corporation showing to whom and for what amount the stock has been pledged.

This contention of the defendants in error cannot be sustained. A national bank is the creature of federal law, and the banking act provides that the stock of the bank shall be transferable on the books of the association in the manner therein prescribed. The state statute cannot be made to supersede the federal statute in this respect. 7 C. J. 766; *Savings Inst. v. National Bank,* 89 Me. 500, 36 Atl. 996.

Another question is, whether upon the facts above stated the receiver is entitled to retain the dividends due on the stock standing in the name of the insolvent stockholder and apply the amount of such dividends on the judgment against the stockholder. It must be borne in mind that when the pledges were made to the plaintiffs in error the bank had ceased doing business as such, and had gone into voluntary liquidation. The bank was not a going concern. *Crout v. First Nat. Bank,* 48 Colo. 557, 562, 111 Pac. 556, 21 Ann. Cas. 418. The bank had discharged all of its debts, and its only business was to collect its remaining assets as a trust fund and make distribution to the stockholders. Its corporate activities were limited to that purpose only. It was otherwise inactive as a corporate body. Its books were not open to sell, issue or transfer stock in the usual way of a going concern. *Muir v. Citizens National Bank,* 39 Wash. 57, 59, 80 Pac. 1007. When it adopted the policy of voluntary liquidation, the liability of the stockholders to the bank was then definitely fixed as of that date, and a stockholder could not thereafter transfer his stock and thereby avoid his liability thereon.

The case of *Richards v. Attleborough Nat. Bank,* 148 Mass. 187, 19 N. E. 353, 1 L. R. A. 781 is in point:

"The reasons for making the stock, as such, transferable, and allowing the purchaser by virtue of his purchase to become a member of the corporation, cease to exist when there is no profit to be made, no business to be done,

and when the property of the bank and its liabilities are fixed, and nothing remains but the adjustment of these. Whether the liquidation of the affairs of the bank be voluntary or involuntary or whether it proceeds under the authority given to continue the bank in existence in order to close its affairs, it is necessarily implied that the respective rights, not only of the creditors and debtors of the bank, but of the stockholders, are to be determined as of the time when it commences. Indeed, were the stock, as such, to continue transferable, serious embarrassments would arise. Where stock is sold in the ordinary course of business, and so transferred, it is not important to the purchaser whether the bank has or has not claims against the stockholder so transferring stock. But when the bank is in liquidation, and when all to which the stockholder is entitled is his proportion of the assets, the claims which the bank may hold against him are a proper offset to those which he may hold against it by virtue of his ownership of stock. He cannot, therefore, place another in the position of a stockholder, even if he may invest him with such rights as he himself equitably may have."

It is doubtless true that the stockholder may make an equitable assignment of his certificate of stock, but his status as a stockholder, with its attendant liabilities, would remain unchanged from the date when the bank goes into liquidation. The bank has a lien upon the dividends in the hands of the receiver, and may properly set off dividends accruing upon the shares of a stockholder against his indebtedness to the bank (2 Morse on Banks and Banking, § 699), and equity will enforce the set-off, so far as they equal each other, when necessary to prevent one of the parties from losing his payment on account of the insolvency of the other. "Upon * * * principle, when a person entitled to share in the distribution of a trust fund is also indebted to the fund and is insolvent, his indebtedness may, in equity, be set off against his distributive share." *King v. Armstrong,* 50 Ohio St. 222, 34 N. E. 163.

The receiver in the instant case, in harmony with this rule, very properly set off the accumulated dividends upon the shares of the McClelland stock against the judgment debt of the insolvent stockholder to the bank.

The contention of Leahey, that he acquired superior rights to the pledgees, by his levy and purchase, and that he was entitled to all future dividends upon the stock, under his certificate of purchase, is not well taken. We have said that the stockholder could make an equitable assignment of his stock. This McClelland did, prior to the levy and sale by Leahey. The right of a shareholder to assign his equitable interest in the shares of stock is fundamental. The pledgees acquired, by the assignment and delivery of the certificates of stock, all of the rights of the assignor, subject to the cross-demands of the bank and its right in equity to enforce the set-off. The plaintiffs in error, as pledgees, are entitled to their pro rata shares of the dividends accruing upon the McClelland stock, after the satisfaction of the judgment standing against him in favor of the bank.

The judgments are reversed and the causes remanded for further proceedings in accordance with this opinion.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE DENISON concur.