**FEDERAL DEPOSIT INSURANCE COR-PORATION, as Receiver for Buena Vis-ta Bank & Trust Company, and Glenn R. McGowan, Petitioners,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Respondent.**

No. 91SC592.

Supreme Court of Colorado, En Banc.

Dec. 14, 1992.

As Modified on Denial of Rehearing Jan. 11, 1993.

Popham, Haik, Schnobrich & Kaufman, Ltd., Wiley Daniel, Richard G. Sander, Denver, Comey & Boyd, Eugene J. Comey, Sean M. Fitzpatrick, Robert F. Schiff, Linda S. Madrid, Washington, DC, for petitioner F.D.I.C.

Rothgerber, Appel, Powers & Johnson, Timothy J. Judson, Tennyson W. Grebenar, Franklin D. O'Loughlin, Denver, for petitioner Glenn R. McGowan.

Berryhill, Cage & North, P.C., Jack W. Berryhill, Denver, Meager & Geer, Robert E. Salmon, William M. Hart, Minneapolis, MN, for Respondent.

D'Amato & Lynch, Robert M. Yellen, New York City, for amicus curiae Nat. Union Fire Ins. Co.

Justice QUINN delivered the Opinion of the Court.

This case raises two questions decided by the court of appeals in *Federal Deposit Ins. Corp. v. Bowen*, 824 P.2d 41 (Colo. App.1991). The court of appeals held that the terms of a "regulatory exclusion" in a directors' and officers' liability insurance policy issued by American Casualty Company to the Buena Vista Bank and Trust Company, a state-chartered banking institution that later was declared insolvent and was closed by the Colorado Banking Commission, unambiguously excluded coverage for claims "based upon or attributable to" actions brought by the Federal Deposit Insurance Corporation (FDIC), either in the FDIC's capacity as a bank regulator or in its capacity as liquidator of the insolvent bank on behalf of the bank's depositors, creditors, and stockholders. The court of appeals also held that neither federal nor state public policy precluded judicial enforcement of the regulatory exclusion under circumstances where the FDIC obtained a judgment against the insolvent bank's former directors for negligence and breach of fiduciary duty in managing the bank and then attempted to garnish the insurance proceeds as an asset of the bank. We granted the FDIC's petition for certiorari to review the court of appeals' resolution of these issues. Although we conclude that the regulatory exclusion is unambiguously written so as to exclude coverage for common law claims asserted by the FDIC against the former directors of the insolvent bank, we hold that judicial enforcement of the regulatory exclusion contravenes the important public policy underlying the Colorado Banking Code of 1957, §§ 11–1–101 to –11–11–110 and 11–22–101 to –11–23–125, 4B C.R.S. (1987 & 1992 Supp.), of vesting the FDIC, in its role as liquidator of an insolvent state-chartered bank, with the authority and responsibility for protecting the legitimate interests of the bank's depositors, creditors, and stockholders by marshalling the bank's assets and equitably compensating them for their losses resulting from the negligence and breach of fiduciary duty on the part of the bank's former directors. By the term "the bank's assets," we mean the property interest of both the Buena Vista Bank and the bank's former directors in the directors' and officers' liability police issued to the bank. We accordingly reverse the judgment of the court of appeals and remand the case to that court for consideration of any other issues raised by the parties in the original appeal to that court and not resolved by the court of appeals in its opinion.

I.

On August 28, 1986, the Colorado Banking Board closed the state-chartered Buena Vista Bank and Trust Company due to its insolvency and appointed the FDIC as liquidator for the bank pursuant to section 11–5–105(1), 4B C.R.S. (1992 Supp.). Upon the FDIC's appointment all the assets, business, and property of the bank were deemed to have been transferred from the bank and the banking board to the FDIC.

§ 11–5–105(3), 4B C.R.S. (1992 Supp.). In August 1988 the FDIC commenced a civil action against three former directors of the Buena Vista Bank, in which it alleged that the directors had negligently managed the bank and had breached their fiduciary obligations to the bank's depositors, creditors, and stockholders. The FDIC subsequently obtained a 3.2 million dollar default judgment against two of the bank directors [1] and then served a writ of garnishment on American Casualty Company, which had issued a liability policy covering the bank's directors and officers in the amount of one million dollars. The insurance policy, entitled Directors' and Officers' Liability Insurance Policy Including Bank Reimbursement, provided as follows:

> In consideration of the payment of the premium and in reliance upon all statements made and information furnished to The Insurer (a stock insurance company, hereinafter called the Insurer) including the statements made in the application and subject to all of the terms, conditions, and limitations of this policy, the Insurer agrees:

> (a) With the Directors and Officers of the Bank that if, during the policy period any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Insurer will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers or any of them, their heirs, legal representatives or assigns all Loss which the Directors and Officers or any of them shall become legally obligated to pay.

> (b) With the Bank that if, during the policy period, any claim or claims are made against the Directors and Officers, individually or collectively, for a Wrongful Act, the Insurer will pay, in accor-

dance with the terms of this policy, on behalf of the Bank all Loss for which the Bank is required to indemnify or for which the Bank has to the extent permitted by law, indemnified the Directors and Officers.

The insurance policy also provided that the liability coverage was applicable to "a shareholders' derivative action brought by a shareholder of the institution other than by an insured."

American Casualty Company answered the writ of garnishment by denying that it held or possessed any personal property owed to or owned by the judgment debtor-directors of the Buena Vista Bank. American Casualty Company's denial was based on a "regulatory exclusion" contained in the policy which provided as follows:

> It is understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any claim made against the Directors [or] Officers based upon or attributable to any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation, the Federal Savings & Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board, or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise, whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

The FDIC traversed American Casualty Company's answer by stating that as liqui-

---

1. The default judgment was originally entered against three bank directors, but the judgment against the third bank director was later vacated by the court of appeals. *See Federal Deposit Ins. Corp. v. Bowen*, No. 89CA1583 (Colo.App. August 23, 1990) (not selected for official publication). The FDIC subsequently agreed to set aside that part of the writ of garnishment based on the judgment against the third director, Glenn R. McGowan, and to stay proceedings against him pending resolution of the issues before us. McGowan joined the FDIC in the petition for certiorari filed in this court.

dator of the Buena Vista Bank it had obtained a judgment against the bank directors and that the insurance liability limit of one million dollars constituted personal property which American Casualty Company presently owed to the two bank directors against whom the 3.2 million dollar judgment had been entered.

The district court found that American Casualty Company was presently indebted to the bank's former directors in the amount of its liability policy limit of one million dollars as the result of the judgment entered in favor of the FDIC against the bank directors based on the FDIC's common law claims of negligence and breach of fiduciary duty. The district court then ruled that the regulatory exclusion applied only to claims which the FDIC might bring in its administrative capacity as a bank regulator and not, as here, as the representative of an insolvent bank's depositors, creditors, and stockholders. The district court next concluded that the regulatory exclusion in the liability policy was "unenforceable because it contravened state and federal public policy and impairs the federal and state statutorily imposed duties of FDIC/Receiver."

American Casualty Company appealed to the court of appeals, which reversed the order sustaining the writ of garnishment and ordered the writ dismissed because, in its view, the regulatory exclusion was unambiguous and excluded any and all claims that the FDIC might bring in its capacity as liquidator, and the regulatory exclusion was not violative of any federal or state public policy. In reversing the judgment of the district court, the court of appeals did not consider American Casualty Company's argument that the district court abused its discretion and violated American Casualty Company's constitutional rights by denying its motion for a continuance of the garnishment hearing, by failing to conduct a full evidentiary hearing on the garnishment issue, and by failing to consolidate the garnishment proceeding and a declaratory action filed by American Casualty Company but dismissed by the district court.[2] We thereafter granted the FDIC's petition for certiorari to review the decision of the court of appeals.

## II.

We first consider whether the terms of the regulatory exclusion are ambiguous. The FDIC's argument on this issue proceeds as follows: the language of the regulatory exclusion is ambiguous in that it might apply to all claims brought by the FDIC or, instead, only to claims relating to losses caused by so-called "secondary suits," which the FDIC describes as lawsuits brought by a third party or parties against a bank director or officer as a result of some previous action taken by the FDIC;[3] in the face of that ambiguity, the exclusion must be construed in favor of the FDIC; and thus, the FDIC contends, the regulatory exclusion does not preclude coverage for the FDIC's claims directly asserted against the former directors of the insolvent Buena Vista Bank. We need not delay long in answering this argument, as we find the regulatory exclusion clear and unambiguous.

 Insurance contracts are construed in accordance with the general law of con-

---

**2.** While the garnishment proceeding was pending in the district court, American Casualty Company filed a separate action seeking a declaration that its policy did not provide coverage for the judgment entered against the Buena Vista Bank's former directors. The district court granted the FDIC's motion to dismiss the declaratory action with prejudice, and American Casualty Company appealed the dismissal along with the district court's ruling on the garnishment. The court of appeals, in reversing the order sustaining the writ of garnishment, ordered the district court to enter an order dismissing the declaratory action without prejudice.

**3.** The FDIC offers the following example of a "secondary suit": the FDIC initially sues a bank borrower in order to collect on a note, and the borrower then sues the bank's directors on a theory of lender liability. The regulatory exclusion, according to the FDIC, would exclude coverage for the claim asserted by the borrower against the directors because it is a claim "based on or attributable to" the FDIC's previous claim against the borrower.

tracts. *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748 (Colo.1990). It is a well-established principle of contract law that a court cannot rewrite an unambiguous insurance contract nor limit its effect by a strained construction. *Mid–Century Ins. Co. v. Liljestrand,* 620 P.2d 1064, 1067 (Colo.1980). If the insurance policy is clear and unambiguous, it should be enforced according to its plain terms. *Kane v. Royal Ins. Co. of America,* 768 P.2d 678, 680 (Colo.1989). It is only where the terms of an agreement are ambiguous or are used in some special or technical sense not apparent from the terms themselves that the court should construe the agreement against the insurer and in favor of coverage. *Chacon,* 788 P.2d at 750. A mere disagreement between litigating parties about the meaning of an insurance provision, however, does not serve to create an ambiguity. *Kane,* 768 P.2d at 680.

The plain terms of the regulatory exclusion exclude coverage for any loss sustained by the directors and officers which results from "any action" brought by the FDIC as "receiver, conservator, liquidator, or otherwise," whether brought in the name of the FDIC or in the name of a third party. In our view, the insurance policy issued by the American Casualty Company unqualifiedly states that no coverage will be afforded under the policy for any suit brought by the FDIC against the bank's directors or officers. Other courts have analyzed the language of similar regulatory exclusions and have found the language to be clear and unambiguous. *See, e.g., American Casualty Co. of Reading, Pa. v. Federal Deposit Ins. Corp.,* 944 F.2d 455, 460 (8th Cir.1991); *St. Paul Fire & Marine v. Federal Deposit Ins. Corp.,* 765 F.Supp. 538, 549 (D.Minn.1991); *American Casualty Co. of Reading, Pa. v. Baker,* 758 F.Supp. 1340, 1345 (C.D.Cal.1991). We similarly hold that the language of the regulatory exclusion excludes coverage for the FDIC's common law claims against the former directors of the Buena Vista Bank for negligence and breach of fiduciary duty.

## III.

We turn now to consider whether the regulatory exclusion is void as contrary to public policy. The FDIC contends that judicial enforcement of the regulatory exclusion violates the public policy of federal and state banking law by depriving the FDIC of its authority to act in a manner calculated to protect the interests of an insolvent bank's depositors, creditors, and stockholders by marshalling the bank's assets and equitably distributing those assets to pay the claims of depositors, creditors, and stockholders resulting from the bank's former directors' negligence and breach of fiduciary duty.

It is a long-standing principle of contract law that a contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy. *Restatement (Second) of Contracts* § 178(1) (1981); *see Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83–84, 102 S.Ct. 851, 859–860, 70 L.Ed.2d 833 (1982); *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 109 (Colo.1992); *University of Denver v. Industrial Comm'n of Colo.,* 138 Colo. 505, 509, 335 P.2d 292, 294 (1959). We have not hesitated to apply this principle to terms and conditions of insurance contracts which undermine legislatively expressed policy. *See, e.g., Meyer v. State Farm Mut. Auto. Ins. Co.,* 689 P.2d 585, 589 (Colo.1984) (household exclusion in automobile liability policy held invalid as contrary to public policy expressed in Colorado Auto Accident Reparations Act); *Newton v. Nationwide Mut. Fire Ins. Co.,* 197 Colo. 462, 468, 594 P.2d 1042, 1046 (1979) (insurance policy provision which permitted insurer to subtract PIP payments from uninsured motorist coverage so as to reduce that coverage to less than statutory minimum violative of public policy in Colorado Auto Accident Reparations Act). It is in light of that long-established principle that we must evaluate the regulatory exclusion in the context of federal and state banking law. Although we view the validity of the regulatory exclusion as an "open question" un-

der federal law and one we need not resolve here, we conclude that, as a matter of state law, the judicial enforcement of the regulatory exclusion undermines the authority and responsibility which the Colorado Banking Code vests in the FDIC, as liquidator of a state-chartered insolvent bank, for protecting the interests of the bank's depositors, creditors, and stockholders by making equitable payment to them out of the bank's assets as compensation for losses caused by the negligence and breach of fiduciary duty of the bank's former directors.

### A.

The Federal Financial Institutions Reform, Recovery and Enforcement Act (FIRREA) authorizes the appointment of the FDIC as conservator or receiver for an insolvent state-chartered bank, and states:

**(A) Appointment by appropriate State supervisor**

Whenever the authority having supervision of an insured State depository institution (other than a District depository institution) appoints a conservator or receiver for such institution and tenders appointment to the [FDIC], the [FDIC] may accept such appointment.

**(B) Additional powers**

In addition to the powers conferred and the duties related to the exercise of such powers imposed by State law on any conservator or receiver appointed under the law of such State for an insured State depository institution, the [FDIC], as conservator or receiver ... shall have the powers conferred and the duties imposed by this section on the [FDIC] as conservator or receiver.

12 U.S.C. § 1821(c)(3)(A–B) (1989). Congress granted the FDIC broad powers and duties to carry out its role as conservator or receiver of failed depository institutions as illustrated by section 1821(d)(2)(A)(i) of FIRREA, which provides that the FDIC

shall, as conservator or receiver, and by operation of law, succeed to all rights,

titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

A comprehensive review of the scope of section 1821(d)(2)(A)(i) was recently undertaken by the Tenth Circuit Court of Appeals in *Federal Deposit Ins. Corp. v. American Casualty Co. of Reading, Pa.,* 975 F.2d 677 (10th Cir.1992), in the context of the precise question at issue here—i.e., whether a regulatory exclusion in a directors' and officers' liability policy should be held void as contrary to public policy. The Tenth Circuit began its analysis with the observation that the purpose of FIRREA was to revamp "the deposit insurance fund system in order to strengthen the country's financial system" and, to that end, Congress "enhanced the regulatory and enforcement powers of the FDIC." 975 F.2d at 681. The court further noted that, because FIRREA encompasses Congress's concerns about the powers of the FDIC to recover from parties responsible for a bank's failure, the FDIC's argument "might provide a basis for voiding the exclusion at issue here" in the absence of a congressional statement on the question of the validity of regulatory exclusions. *Id.* The court then added:

Congress, however, did consider the very question here, and explicitly stated its intentions to remain neutral on that question. 12 U.S.C. § 1821(e)(12) states:

(12)(B) No provision of this paragraph may be construed as impairing or affecting any right of the conservator or receiver to enforce or recover under a directors' or officers' liability insurance contract or depository institution bond under other applicable law.

12 U.S.C. § 1821(e)(12)(B). FIRREA's legislative history further indicates Congress's cognizance of the regulatory exclusions in directors' and officers' liability insurance. For example, the section by section analysis of FIRREA states:

... [18 U.S.C. § 1821(e)(12)] remains neutral regarding such litigation [i.e., where FDIC challenges clauses in directors' and officers' liability insurance contracts] and regarding the FDIC's ability under other provisions of State or Federal law, current or future, to pursue claims on such contracts or bonds. *For example, if the law of a particular state declares limitations on the enforceability of directors' or officers' liability contracts to be void as against public policy, the FDIC could pursue a claim on such a contract under that State's law.*

(S.Rep. No. 19, 101st Cong., 1st Sess. 315 (1989) U.S.Code Cong. & Admin.News 1989, p. 86).

975 F.2d at 681–82. (Emphasis and last set of brackets added.) Although the court held that 18 U.S.C. § 1821 could not be read to express a public policy voiding regulatory exclusions because of Congress's neutrality on the question,[4] it went on to state that "other statutes, state or federal, could articulate a public policy voiding these exclusions." 975 F.2d at 682. The Tenth Circuit's analysis thus makes clear that, while Congress has expressed no intent to influence the development of case law relating to the validity of a regulatory exclusion under FIRREA, Congress has expressed support for the FDIC to pursue such claims where regulatory exclusions violate the public policy of a particular state. The appropriate focus for resolving the issue in this case, therefore, is the statutory scheme of the Colorado Banking Code of 1957, to which we now turn.

**4.** The "public policy" aspect of the relevant federal statutory scheme has figured prominently in virtually all of the federal court decisions that have addressed the validity of insurance exclusions which prohibit regulatory bodies such as the FDIC and the Federal Savings and Loan Insurance Corporation (FSLIC) from enforcing rights under directors' and officers' liability policies. *Compare, e.g., Branning v. CNA Ins. Cos.,* 721 F.Supp. 1180, 1184 (W.D.Wash.1989) (regulatory exclusion substantially hinders FSLIC's exercise of its federal statutory authority to collect all obligations and money due the bank and to settle claims against the bank and, therefore, is contrary to federal policy and invalid); *Federal Savings and Loan Ins. Corp. v. Oldenburg,* 671 F.Supp. 720, 723 (D.Utah 1987) (regulatory exclusion in directors' and officers' liability policy void as against public policy since "the question is not whether [the bank] bargained away the rights of the FSLIC to carry out its federal statutory function, but whether public policy will allow [the bank] to bargain away the rights of FSLIC to carry out that function"), *with e.g., American Casualty Co. of Reading, Pa. v. Baker,* 758 F.Supp. 1340, 1347 (C.D.Cal.1991) (since Congress refused to invalidate regulatory exclusions when it enacted FIRREA, there are insufficient indications by Congress to justify the invalidation of the exclusion as contrary to federal policy); *Federal Deposit Ins. Corp. v. Aetna Casualty and Surety Co.,* 903 F.2d 1073, 1077 (6th Cir.1990) (section 1821 does not provide a basis for a dominant public policy that justifies voiding the regulatory exclusion in the directors' and officers' liability policy).

At the time of FIRREA's passage in the House on August 4, 1989, the Banking, Housing, and Urban Affairs Committee of the House of Representatives seemed to look quite favorably on judicial invalidation of regulatory exclusions. House Report No. 101–54(I) U.S.Code Cong. & Admin.News 1989, p. 86 expressly noted that FIRREA

retains current law for the treatment of exclusionary clauses in directors and officers liability insurance contracts or financial institution bonds. Nothing in subsection (c) impairs or affects any rights a conservator or receiver already appointed had under current law immediately prior to the enactment of this Act or with regard to institutions to which a conservator or receiver is appointed in the future to enforce or recover under a directors or officers insurance policy contract or financial institution bond.

In the section reviewing the "current law for the treatment of exclusionary clauses", the House Report states:

The majority of courts which have considered the provisions in contracts which provide that coverage terminates upon appointment of a receiver have found such provisions to be against public policy and therefore unenforceable. In a recent case [*Branning,* 721 F.Supp. at 1184], the Court held that such a clause "substantially hinders FSLIC's exercise of its federal powers and therefore is contrary to federal policy". The Court stated further:

"If the court were to enforce the FSLIC exclusion as written, all of FSLIC's claims, regardless of their origin or status under the policy, *would not be covered simply because* FSLIC rather than a shareholder, depositor, or third party prosecuted the claim. Private parties to an insurance contract may not frustrate *the Congressional purpose behind receivership* by annulling FSLIC's federal powers." (Brackets added).

B.

■ Section 11–5–102(3)(a), 4B C.R.S. (1992 Supp.) states:

If the banking board determines, after a hearing before the banking board, to liquidate the state bank, it shall give notice of its determination by posting upon the premises a notice reciting that the determination has been made to liquidate the bank. A copy of the notice shall be filed in the district court in and for the county in which the bank is located. The commissioner, upon order of the banking board, shall tender to the federal deposit insurance corporation or its successor the appointment as liquidator under section 11–5–105.

Upon the appointment of the FDIC as liquidator, the possession of all the assets, business, and property of a liquidated bank shall be deemed transferred from such bank and to the FDIC. § 11–5–105(3), 4B C.R.S. (1992 Supp.).

■ The Colorado Banking Code expressly grants the FDIC, in its role as liquidator of an insolvent banking institution, "all the powers and privileges provided by the laws of this state with respect to the liquidation of a banking institution, its depositors, and other creditors." § 11–5–105(4), 4B C.R.S. (1992 Supp.). The role of the FDIC as statutory liquidator of the Buena Vista Bank included the authority and responsibility for assembling and conserving the bank's assets and then converting those assets to cash in order to pay the legitimate claims made against the bank by its "depositors" and "other creditors." The FDIC also had the right to bring the tort action against the bank's former directors for the purpose of determining their legal liability and the extent of the losses which they caused to the bank's depositors and other creditors.

■ The FDIC had similar authority and responsibility for protecting the legitimate interests of the bank's stockholders. A banking corporation can act only through its directors and officers who, in the eyes of the law, represent the bank itself and occupy a fiduciary relationship to stockholders. *See generally Ingwersen Mfg. Co. v. Maddocks,* 118 Colo. 281, 298–99, 195 P.2d 730, 739 (1948); 1 C. Krendle, *Colorado Methods of Practice* § 60 (1989). The powers and privileges granted to stockholders include the affirmative right to bring suit against corporate directors for negligent management and breach of fiduciary duty. *See, e.g., Holland v. American Founders Life Ins. Co.,* 151 Colo. 69, 75, 376 P.2d 162, 165 (1962); *Nicholson v. Ash,* 800 P.2d 1352, 1356 (Colo.App.1990); *Greenfield v. Hamilton Oil Corp.,* 760 P.2d 664, 667–68 (Colo.App.1988); *Great Western United Corp. v. Great Western Producers Cooperative,* 41 Colo.App. 349, 353, 588 P.2d 380, 382 (1978); *Security Nat'l Bank v. Peters, Writer & Christensen, Inc.,* 39 Colo.App. 344, 351–53, 569 P.2d 875, 880–81 (1977). Although certain procedural requirements must be met for a shareholders' derivative suit to be maintained, *see* C.R.C.P. 23.1, the purpose underlying these requirements is the avoidance of multiple litigation by individual stockholders or small groups of stockholders. *Bell v. Arnold,* 175 Colo. 277, 282, 487 P.2d 545, 547 (1971). The FDIC's common law claims against the bank's former directors and the FDIC's subsequent effort to garnish the proceeds of the directors' and officers' liability policy served the function of avoiding a multiplicity of lawsuits not only by stockholders but by depositors and creditors as well.[5]

■ Moreover, American Casualty Company's insurance policy expressly provides liability coverage in a shareholders'

---

**5.** We have previously recognized in our case law that the role of a receiver of a failed banking institution is to marshall the bank's assets for the benefit of the bank's stockholders. *Grout v. First Nat'l Bank of Grand Junction,* 48 Colo. 557, 564, 111 P. 556, 559 (1910); *see also McClelland v. Merchants' & Miners' Nat'l Bank of Idaho Springs,* 77 Colo. 302, 307, 236 P. 774, 776 (1925). The FDIC had that same responsibility to the Buena Vista Bank stockholders in its role as statutory liquidator.

derivative action against the bank or its directors. If the bank's stockholders could have brought a derivative action against the bank or its former directors for negligence and breach of fiduciary duty and then could have garnished the proceeds of the insurance policy to satisfy the judgment, it strains logic to prohibit the FDIC from garnishing the same insurance proceeds to satisfy the previously determined legal liability of the former directors for losses caused not only to the bank's depositors and creditors but also to the bank's stockholders. In our view, the common law action filed by the FDIC against the bank's former directors and the FDIC's subsequent effort to garnish the proceeds of the officers' and directors' liability policy in satisfaction of the judgment is entirely consistent with section 11–5–107, 4B C.R.S. (1987), which was enacted in 1957 as part of the Colorado Banking Code and states:

Among its other powers, the federal deposit insurance corporation, in the performance of its powers and duties as such liquidator, has the right and power, upon the order of a court of record of competent jurisdiction, to enforce the individual liability of the directors of any such banking institution.[6]

The FDIC's responsibility as statutory liquidator of an insolvent bank to protect the interests of the bank's depositors, creditors, and stockholders is further evidenced by the statutory priority scheme for the payment of claims against the bank. In 1989, the General Assembly enacted the "Public Deposit Protection Act" as part of the Colorado Banking Code of 1957. § 11–10.5–101 to –112, 4B C.R.S. (1992 Supp.). One of the express purposes of the 1989 statute is to ensure the expedited repayment of public funds held on deposit by a bank "that are either not insured by or are in excess of the insured limits of federal deposit insurance" in the event of default or subsequent liquidation of the bank. § 11–10.5–102(1), 4B C.R.S. (1992 Supp.). Section 11–5–105(5)(a), 4B C.R.S. (1992 Supp.), establishes the following priorities for paying claims made against a liquidated bank:

(I) Obligations incurred by the banking board, fees and assessments due to the division of banking, and expenses of liquidation, all of which may be covered by a proper reserve of funds;

(II) Claims of depositors having an approved claim against the general liquidating account of the bank;

(III) Claims of general creditors having an approved claim against the general liquidating account of the bank;

(IV) Claims otherwise proper that were not filed within the time prescribed by this code;

(V) Approved claims of subordinate creditors; and

(VI) Claims of stockholders of the bank.

## IV.

▆▆ Although the validity of the regulatory exclusion in American Casualty Company's liability policy is not settled under federal banking law, we are satisfied that the regulatory exclusion is contrary to the public policy expressed in state banking law. While it is true that the Colorado Banking Code does not require a bank to purchase directors' and officers' liability policy, that fact is not controlling on the issue before us. What we consider of critical importance is that the Colorado Banking Code vests the FDIC, as the statutory

---

**6.** The purpose of section 11–5–107, 4B C.R.S. (1987), is to eliminate the possibility that bank directors might be exempted from their liability for mismanaging the bank. In the absence of a statutory authorization similar to 11–5–107, some courts have expressed their reluctance to extend the liability of directors of ordinary corporations to directors of banking corporations. *See, e.g., Belmont v. Gentry,* 62 S.D. 118, 252 N.W. 1 (1933) (statute providing for recovery from corporate directors not applicable to bank directors); *Squire v. Guardian Trust Co.,* 79 Ohio App. 371, 72 N.E.2d 137 (1947) (duties of bank director must be statutory or they do not exist).

liquidator of an insolvent bank, with an array of rights and responsibilities designed to protect the interests of the bank's depositors, creditors, and stockholders. These rights and responsibilities include the following: the FDIC's right to enforce the powers and privileges of depositors and creditors in order to obtain some satisfaction for losses caused to them by the bank's former directors, § 11–5–105(4), 4B C.R.S. (1992 Supp.); the FDIC's right to enforce the individual liability of the bank's former directors to depositors, creditors, and stockholders as well, § 11–5–107, 4B C.R.S. (1987); and the FDIC's responsibility for marshalling the bank's assets and paying the valid claims of the depositors, creditors, and stockholders in accordance with a statutory priority scheme, § 11–5–105(5)(a), 4B C.R.S. (1992 Supp.).

■ Pursuant to the Colorado Banking Code, the FDIC, as liquidator of the Buena Vista Bank, had the right to sue the bank's former directors for the negligence and breach of fiduciary duty and also had the responsibility of marshalling the bank's assets—in this case, the proceeds of an officers' and directors' liability insurance policy—in order to provide some equitable compensation to the bank's depositors, creditors, and stockholders for losses sustained by them as the result of the former directors' negligence and breach of fiduciary duty. The regulatory exclusion in American Casualty Company's liability policy, however, nullifies the ability of the FDIC to carry out its statutory charge.

While American Casualty Company's liability policy provides coverage for losses resulting to the depositors, creditors, and stockholders as the result of the bank directors' negligence and breach of fiduciary duty, the regulatory exclusion precludes coverage for those very same losses when, as here, the FDIC, in carrying out its rights and responsibilities as statutory liq-

uidator, has sought to protect the interests of the bank's depositors, creditors, and stockholders by suing the bank's former directors and obtaining a judgment against them for their negligence and breach of fiduciary duty. In so excluding coverage, American Casualty Company's liability policy undermines the statutory ability and responsibility of the FDIC to protect the interests of the bank's depositors, creditors, and stockholders and, in that respect, directly conflicts with the public policy of the Colorado Banking Code.

We accordingly reverse the judgment of the court of appeals and remand the case to that court for consideration of any other issues raised by the parties in the original appeal to that court and not resolved by the court of appeals in its opinion.

ERICKSON, J., concurs in part and dissents in part.

ROVIRA, C.J., and LOHR, J., join in the concurrence and dissent.

Justice ERICKSON concurring in part and dissenting in part:

The court of appeals in *FDIC v. Bowen*, 824 P.2d 41 (Colo.App.1991), reversed an order of the district court authorizing the garnishment by the Federal Deposit Insurance Corporation (FDIC) of the policy limits of a directors' and officers' liability insurance policy (D & O Policy) issued by American Casualty Company of Reading, Pennsylvania (ACC) to the Buena Vista Bank and Trust Company (Buena Vista Bank), a state-chartered financial institution.

The court of appeals held that a regulatory exclusion contained in the D & O Policy (Regulatory Exclusion) unambiguously prevents the FDIC from pursuing a garnishment claim against the D & O Policy and that the Regulatory Exclusion is not void as against public policy. *Id.* at 43.[1] Accordingly, the court of appeals remanded

---

1. The D & O Policy contains endorsements excluding coverage in certain instances. The primary endorsement relevant to this case is a regulatory exclusion that is commonly included

in directors' and officers' policies sold to banks. The Regulatory Exclusion provides:

It is understood and agreed that the Insurer shall not be liable to make any payment for

the case to the district court with directions to dismiss the writ of garnishment and to modify the dismissal of ACC's declaratory judgment action to reflect that the dismissal was without prejudice.

We granted certiorari to decide two issues: (1) whether the court of appeals erred in determining that the Regulatory Exclusion unambiguously excludes coverage for claims asserted by the FDIC; and (2) whether federal or state public policy precludes enforcement of the Regulatory Exclusion when the claim against the D & O Policy is asserted by the FDIC, acting in its capacity as receiver, rather than by a shareholder of a failed state-chartered bank.

The majority concludes that while the regulatory exclusion is unambiguous, judicial enforcement of the regulatory exclu-sion contravenes the public policy of Colorado as reflected in the Colorado Banking Code of 1957. Maj. op. at 1287. In deciding the public policy question on state policy grounds, the majority virtually ignores the decisions of the federal courts that have addressed the federal public policy issue and have held that federal public policy does not preclude enforcement of regulatory exclusions contained in directors' and officers' liability insurance policies.[2] The majority states only that "Congress has expressed no intent to influence the development of case law relating to the validity of a regulatory exclusion under [the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA)]." Maj. op. at 1292.

Because I believe the General Assembly has not expressed a greater public policy

---

Loss in connection with any claim made against the Directors or Officers based upon or attributable to:

any action or proceeding brought by or on behalf of the [FDIC] ... (hereinafter referred to as "Agencies"), including any type of legal action which such Agencies have the legal right to bring as receiver, conservator, liquidator or otherwise; whether such action or proceeding is brought in the name of such Agencies or by or on behalf of such Agencies in the name of any other entity or solely in the name of any Third Party.

2. An overwhelming majority of federal courts have held that federal public policy does not preclude enforcement of regulatory exclusions. *See, e.g., FDIC v. American Casualty Co.,* 975 F.2d 677 (10th Cir.1992) (holding that a regulatory exclusion did not violate federal public policy); *St. Paul Fire and Marine Ins. Co. v. FDIC,* 968 F.2d 695 (8th Cir.1992) (stating that FIRREA undermines the FDIC's public policy argument based on specific Congressional deletions of a provision allowing the FDIC to require directors' and officers' liability insurance policies to remain in effect even if the insurance policy contained a provision terminating or limiting the FDIC's rights as receiver); *American Casualty Co. v. Kirchner,* No. 91–C–0797–C, 1922 WL 300843 (W.D.Wis. May 22, 1992) (stating that however strenuously and often the FDIC argues that enforcement of a regulatory exclusion violates public policy, the argument does not square with the decisions of Congress not to require banks to carry liability insurance, not to prohibit regulatory exclusions, and not to interfere with court decisions that enforced the exclusions); *FDIC v. Continental Casualty Co.,* 796 F.Supp. 1344 (D.Or.1991) (finding that neither the statutory nor regulatory scheme governing the FDIC establishes an explicit, well-defined, and dominant public policy regarding regulatory exclusions); *FDIC v. Zaborac,* 773 F.Supp. 137 (C.D.Ill.1991) (holding that a regulatory exclusion does not undermine any Congressional purpose or annul FDIC powers and stating that whether regulatory exclusions will ultimately benefit or burden the federal banking system is a policy question to be decided by Congress or by an agency under its rule-making power); *FDIC v. American Casualty Co.,* No. 90–CV–0265–J (D.Wyo. July 3, 1991) (holding that a regulatory exclusion does not affect the rights assumed by the FDIC because the FDIC still assumes all rights of the shareholders of the bank; the FDIC may maintain an action against directors or officers, and if successful may obtain a judgment to which the shareholders may be entitled; these rights are not thwarted by the endorsements; rather, the endorsements are limitations on the assets of the institution and not on the rights or privileges of persons bringing suit against directors or officers); *Gary v. American Casualty Co.,* 753 F.Supp. 1547 (W.D.Okla.1990) (finding that when directors' and officers' liability insurance is not required by statute, and there is no mandated form of coverage, directors' and officers' liability insurance policies providing only limited coverage are not contrary to public policy). *See also FSLIC v. Shelton,* 789 F.Supp. 1355 (M.D.La. 1992); *Powell v. American Casualty Co.,* 772 F.Supp. 1188 (W.D.Okla.1991); *American Casualty Co. v. Baker,* 758 F.Supp. 1340 (C.D.Cal. 1991); *Continental Casualty Co. v. Allen,* 710 F.Supp. 1088 (N.D.Tex.1989).

determination regarding the liquidation of state-chartered banks by the FDIC than has Congress regarding the liquidation of financial institutions containing federally insured deposits by the FDIC, I am unpersuaded by the majority's holding that state public policy is violated in a situation where federal public policy clearly is not. Moreover, I do not believe that we should read a public policy regarding regulatory exclusions into the Colorado Banking Code when the General Assembly has not affirmatively addressed the issue or disclosed such a policy.[3] Therefore, while I agree with the majority that the D & O Policy is unambiguous, I respectfully dissent from section III of the majority opinion.

## I

The Regulatory Exclusion contained in the D & O Policy that ACC issued to the Buena Vista Bank would be void and unenforceable if the exclusion violates state public policy by attempting to dilute, condition, or limit, statutorily mandated coverage. *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990); *see also FDIC v. American Casualty Co.*, 975 F.2d 677, 682 (10th Cir.1992) (finding that state statutes could articulate a public policy voiding regulatory exclusions). Additionally, parties cannot by private contract abrogate statutory requirements or

conditions affecting the public policy of the state. *University of Denver v. Industrial Comm'n*, 138 Colo. 505, 509, 335 P.2d 292, 294 (1959). However, a contract, freely entered into by the parties, does not violate public policy unless there are definite statements in the law reflecting that policy. *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945); *St. Paul Mercury Ins. Co. v. Duke University*, 849 F.2d 133, 135 (4th Cir.1988); *see also Superior Oil Co. v. Western Slope Gas Co.*, 549 F.Supp. 463, 468 (D.Colo.1982) *aff'd*, 758 F.2d 500 (10th Cir.1985) (holding that a court is not warranted in voiding a contract as contrary to public policy until it is fully convinced that a public policy is clearly revealed in the laws of the jurisdiction). The majority apparently finds a "definite statement" of public policy in the Colorado Banking Code. However, in my view, there is no clear revelation of public policy or statutory inhibition in the laws of Colorado.

## II

Congress enacted FIRREA in 1989. As the majority explains, the Senate report of FIRREA states:

The FSLIC and FDIC have frequently challenged clauses in [director's and officer's liability insurance contracts], contending that the clauses are unenforcea-

---

**3.** No other state has found similar regulatory exclusions to be violative of their state banking codes. Only Maryland has addressed the issue of regulatory exclusions in directors' and officers' liability insurance policies on state public policy grounds. *See Finci v. American Casualty Co.*, 323 Md. 358, 593 A.2d 1069 (1991). In *Finci*, the Court of Appeals of Maryland held that a regulatory exclusion contained in a directors' and officers' liability policy did not violate the public policy of Maryland by impairing the Maryland Deposit Insurance Fund's (MDIF) ability to perform its statutorily authorized responsibilities. The court said:

Stripped to its essentials, MDIF's argument is that the taxpayers of Maryland will have to pay any deficit in the insurance fund ... and that it is socially desirable to reduce that deficit to the maximum extent possible.... The problem presented here is the clash of that appealing result with the established poli-

cy of freedom of contract.... Every statute that places a duty on a public official or public agency to collect funds for the commonwealth embodies a public policy that the funds should be collected to the maximum extend possible. That desirable goal does not mean that the Comptroller, for example, on that basis alone, can invalidate a tenancy by the entireties provision in a deed under which an individual, delinquent taxpayer economically holds an interest in realty. Similarly, if the regulatory exclusion is unenforceable because it prevents the State from collecting money, then the $3 million limit of D & O coverage in the [ACC] policy is likewise invalid, and [ACC] would stand with the promise to pay unlimited sums for which the directors and officers are liable.

*Id.* 593 A.2d at 1079–80. I agree with the well-reasoned conclusions of *Finci.*

ble. [18 U.S.C. § 1821(e)(12)] remains neutral regarding such litigation and regarding the FDIC's ability under other provisions of *State* or Federal *law,* current or future, to pursue claims on such contracts or bonds. For example, if the *law of a particular State declares limitations on the enforceability of director's or officer's liability contracts to be void as against public policy,* the FDIC could pursue a claim on such a contract under that State's law.

S.Rep. No. 19, 101st Cong., 1st Sess. 315 (1989) U.S.Code Cong. & Admin.News 1989, p. 86 (emphasis added). I do not read this statement in the same way as the majority. In my view, the Senate statement requires that an individual state affirmatively *declare* specific *limitations on the enforceability of directors' and officers' liability insurance policies to be void as against public policy* and adopt the public policy into that state's laws.

Both the majority and the FDIC assert that the General Assembly has established a public policy allowing the invalidation of regulatory exclusions based only on Section 11–5–105, 4B C.R.S. (1992 Supp.), of the Colorado Banking Code.[4] Section 11–5–105 was rewritten and adopted in 1989. Several subsections were amended in 1990 and 1991. Despite the opportunity to express a public policy in either of the two amendments to section 11–5–105 following the enactment of FIRREA, the General Assembly has never affirmatively expressed such a public policy in the Colorado Banking Code. Absent clear legislative direction, I

find no public policy prohibiting regulatory endorsements in directors' and officers' liability insurance policies sold to state-chartered banks. Had the General Assembly intended to restrict the use of limiting endorsements like regulatory exclusions, it could have accepted the Congressional invitation and affirmatively adopted such a public policy into the Colorado Banking Code.

### III

The FDIC advances two arguments in support of its state public policy claim. First, the FDIC asserts that the rights granted to it under section 11–5–105(4) are rooted in the need of the FDIC to control all aspects of post-bank failures and that enforcement of the Regulatory Exclusion impliedly violates a mandate of the Colorado Banking Code. Second, the FDIC asserts that the Regulatory Exclusion is unenforceable because it conflicts with Colorado law by impermissibly discriminating against the FDIC. Discrimination occurs because an insured versus insured endorsement included in the D & O Policy allows coverage for shareholder derivative claims which are brought directly by shareholders, whereas the Regulatory Exclusion precludes coverage for the same claims when asserted by the FDIC.[5] I do not agree that either of the FDIC's arguments illustrate a violation of state public policy and would affirm the judgment of the court of appeals.

### A

The majority holds that the Regulatory Exclusion in the D & O Policy contravenes

---

**4.** Section 11–5–105 is entitled "Federal deposit insurance corporation or successor as liquidator."

**5.** The FDIC states that by operation of law, under both federal and state statutes, it succeeds to all the rights of shareholders, including the right to bring shareholder derivative actions. *Compare* 12 U.S.C. § 1821 (1988) (FDIC as receiver of failed banks succeeds to all rights, titles, powers, and privileges of *the insured depository institution, and of any stockholder, member, account holder, depositor, officer, or director of such bank.) with* § 11–5–105(3)–(4), 4B C.R.S. (1992) (FDIC as receiver shall succeed by operation of law to possession of all the

assets, business, and property of every kind and nature, and "shall have all the powers and privileges provided by the laws of Colorado with respect to the liquidation of a bank, *its depositors, and other creditors.").* (Emphasis added.)

The FDIC contends that section 11–5–105 gives it all the powers of stockholders because section 11–5–105(5), which provides the priority of distribution of the liquidated assets of the bank, qualifies stockholders as an "other creditor" of the bank. I express no opinion on the validity of an FDIC shareholder derivative claim based upon the FDIC's interpretation of section 11–5–105. *See infra* section IIIB.

the statutory grant of power from the General Assembly to the FDIC to marshall and collect the Buena Vista Bank's assets. *See* § 11–5–105(3)–(4), 4B C.R.S. (1992), (providing that the FDIC as receiver shall succeed by operation of law to possession of all the assets, business, and property and shall have all the powers and privileges provided by the laws of Colorado with respect to the liquidation of a bank).

However, the majority does not point to legislative history, any statute enacted by the General Assembly, or any decision rendered by this court, or by the court of appeals that establishes or suggests a public policy that regulatory exclusions included in directors' and officers' liability insurance policies are unenforceable when purchased by state-chartered banks. In fact, there is no statutory requirement that state-chartered banks are required to carry directors' and officers' liability insurance, or that they are required to carry only directors' and officers' liability insurance without regulatory exclusions. However, the result of the majority's opinion in this case is that if a state-chartered bank wishes to purchase directors' and officers' liability insurance, the bank is now required to purchase that insurance without a regulatory exclusion.

In my view, the majority has misinterpreted the Colorado Banking Code. The Colorado Banking Code provides that "[s]tate bank directors ... *shall have the same rights as directors ... of corporations for profit* as set forth in section 7–3–101.5 [of the Colorado Corporations Code]." § 11–3–121, 4B C.R.S. (1987) (emphasis added). Section 7–3–101.5, 3B C.R.S. (1992), establishes the right of directors to indemnification from the corporation for profit (or bank) for claims brought against the director in his capacity as a director. Among the rights of the corporation for profit (or bank) which are included in section 7–3–101.5, is the right to:

> *purchase and maintain insurance* on behalf of a person who is or was a *director* ... of the corporation [or bank]

... *against any liability* asserted against or incurred by him in such capacity or arising out of his status as such, whether or not the corporation [or bank] would have the power to indemnify him against such liability under the provisions of this section.

7–3–101.5(9), 3B C.R.S. (1992 Supp.). Moreover, there is no provision in the Colorado Corporations Code prohibiting corporations for profit from purchasing liability insurance containing regulatory exclusions. State-chartered banks, by the express language of the Colorado Banking Code, therefore may not be prohibited from also purchasing liability insurance containing regulatory exclusions. Directors of state-chartered banks "shall have the same rights" as directors of corporations for profit. Therefore, in my view, there is no provision in the Colorado Banking Code, including the statutory grant of power to the FDIC, which diminishes or restricts the right of state-chartered banks to purchase directors' and officers' liability insurance containing exclusions from coverage in myriad of circumstances.

The majority uses the powers granted to the FDIC by the Colorado Banking Code to foreclose the ability of state-chartered banks to preclude liability insurance coverage for the benefit of directors against claims asserted by regulators. This conclusion does not account for the statutory provision that the ability to insure or not insure against such claims lies not in the Colorado Banking Code, but rather, in the Colorado Corporations Code. Certainly, the majority may not judicially amend the Colorado Corporations Code to prohibit corporations for profit from purchasing directors' and officers' liability insurance containing regulatory exclusions. However, the clear implication of the majority opinion is that corporations for profit may not purchase directors' and officers' liability insurance containing regulatory exclusions because the rights relating to the indemnification and insurance of directors of state-chartered banks and directors of

corporations for profit are the same. The majority opinion restricts and prevents state-chartered banks and corporations for profit from purchasing directors' and officers' liability insurance containing regulatory exclusions, a right derived from the Colorado Corporations Code, and not the Colorado Banking Code.

I do not share the majority's view that this court may judicially legislate that state-chartered banks may not purchase directors' and officers' liability insurance containing regulatory exclusions, or that based on Colorado public policy, the regulatory exclusions are unenforceable. Nothing in either the Colorado Banking Code or the Colorado Corporations Code requires or supports such a conclusion. *Schlessinger v. Schlessinger,* 796 P.2d 1385, 1389 (Colo. 1990); *see also FDIC v. American Casualty Co.,* No. 90–CV–0265–J, slip op. at 17 (D.Wyo. July 3, 1991) (stating that a court cannot judicially impose a limitation on a non-required insurance policy any more than it can require a bank to purchase insurance in the first place). In my view, it is within the clear province of the General Assembly to determine whether prohibiting regulatory exclusions in directors' and officers' liability insurance contracts issued to

state-chartered banks is necessary for the protection of the public good.

B

The FDIC's second state public policy claim is based on its assertion that section 11–5–105 furnishes the FDIC the right to bring a shareholder derivative action against the directors and officers of a state-chartered bank.[6] Therefore, the FDIC claims, and the majority accepts without analysis, that because the Regulatory Exclusion conflicts with a statutory right, it must be void as against public policy.[7] While the FDIC claims that it could bring a shareholder derivative action, the fact remains that the FDIC has not asserted a shareholder derivative claim in this case. Throughout the prosecution of its claims against the former directors of the Buena Vista Bank and the garnishment of the D & O Policy, the FDIC has never claimed that it was acting in its capacity as a shareholder, or that it was derivatively suing the directors of the bank.[8]

Neither the district court, nor the court of appeals addressed the question of the legality of state-statutorily based shareholder derivative actions brought directly

**6.** Shareholder derivative suits are subject to a variety of procedural hurdles and defenses which are not ordinarily applicable in direct actions brought by the FDIC. *See* C.R.C.P. 23.1. Insofar as the FDIC asserts that it derives the power to maintain shareholder derivative claims against the directors of a failed *state-chartered* bank from the federal statute, FIRREA, the FDIC's public policy arguments relating to shareholder derivative actions rest on the federal public policy of FIRREA, not the state public policy of Colorado's banking law. Consequently its argument fails for the reasons stated in the cases cited in *supra* note 2.

**7.** Although there is no specific statutory grant of power to the FDIC to assert shareholder derivative claims against directors of a failed bank, the majority concludes that it "strains logic" to prohibit the FDIC from garnishing the same insurance proceeds *that a shareholder could recover* after successfully obtaining a judgment in a shareholder derivative action. Maj. op. at 1294. I do not believe that prohibiting the FDIC from garnishing the D & O Policy in this case

strains logic because the FDIC is given a broad grant of statutory power to pursue claims against directors and officers outside of the numerous *procedural requirements of C.R.C.P.* 23.1. Rather, in light of the procedural hurdles the FDIC must overcome were it to bring a shareholder derivative action, it does strain logic to believe that the FDIC would ever bring a shareholder derivative action against the directors or officers of a *failed state-chartered* bank.

**8.** The record of this action (including the FDIC's complaint against the directors, its writ of garnishment against the policy, its verified traverse *to ACC's answer to the writ of garnishment,* its arguments to the trial court, its answer brief in the court of appeals, its petition for writ of certiorari, and its opening brief in this court) contains *no* reference to a claim that the FDIC was acting in its capacity as a shareholder of a *failed state-chartered bank and was therefore* proceeding derivatively against the directors or the D & O Policy. Whether the FDIC could have pursued a shareholder derivative action is not an issue in this case.

by the FDIC because the FDIC did not raise, or argue, the question before either court. The FDIC did not claim to be acting on behalf of shareholders in its petition for a writ of certiorari, nor did we accept the shareholder derivative action issue for review. The issue of whether the FDIC, acting as a receiver of a failed state-chartered bank, may pursue claims against directors or officers of a failed state-chartered bank on behalf of shareholders by way of a shareholder derivative action is not before this court and should not be addressed. Because the issue was not properly presented for appellate review, we should not determine the question of whether a regulatory exclusion's bar to coverage for derivative claims asserted by the FDIC violates the public policy of Colorado. *See People v. Kruse,* 839 P.2d 1, 3 (Colo.1992) (holding that claims not raised in the district court or court of appeals are not properly before the Supreme Court for review on certiorari); *Vigoda v. Denver Urban Renewal Auth.,* 646 P.2d 900, 907 (Colo.1982) (holding that issue raised only in answer brief cannot be fairly within the issues raised by petition for certiorari); *Sherman Agency v. Carey,* 195 Colo. 277, 280, 577 P.2d 759, 761 (1978) (holding that Supreme Court would not consider issue not mentioned in petition for certiorari even though matter was argued before it); *Berge v. Berge,* 189 Colo. 103, 104, 536 P.2d 1135, 1136 (1975) (holding that Supreme Court need not consider issue not raised in petition for certiorari).

## IV

The majority concludes that the FDIC is statutorily charged with marshalling, col-

lecting and distributing the assets of the failed Buena Vista Bank. Maj. op. at 1293. However, the Buena Vista Bank chose to purchase, pursuant to a statutory grant of power, a directors' and officers' liability insurance policy containing a regulatory exclusion. Because I view the regulatory exclusion to bar coverage under the D & O Policy for all claims asserted against the policy by the FDIC, the D & O Policy is not therefore, an asset which the FDIC can marshall or seize by a writ of garnishment. *See FDIC v. Zaborac,* 773 F.Supp. 137, 145 (C.D.Ill.1991); *Continental Casualty Co. v. Allen,* 710 F.Supp. 1088, 1099–1100 (N.D.Tex.1989).[9]

The parties to the contract (ACC and the Buena Vista Bank) were able to bargain for precisely the amount and type of coverage they wished to agree on. *Zaborac,* 773 F.Supp. at 145 (finding that the FDIC did not have any right to collect under a directors' and officers' policy because a failed bank did not contractually negotiate for coverage protecting the FDIC and that the probable reason the failed bank did not request coverage without a regulatory exclusion was because the costs were higher or coverage without an exclusion was unavailable); *Allen,* 710 F.Supp. at 1100 (stating that the FDIC steps into the shoes of the failed bank and is subject to whatever contracts the failed bank previously entered into, including directors' and officers' policies with regulatory exclusions).[10]

Although the FDIC should not recover the proceeds of the D & O Policy issued to the Buena Vista Bank after it obtained a judgment against two of the former directors, the FDIC may always pursue any claim it has against the directors. *See* 11–

---

**9.** In *Zaborac,* the court found that although the FDIC assumed all of the rights under an insurance policy, because the policy prohibited recovery by the FDIC, the policy did not give the FDIC any rights to recovery of the proceeds. *Zaborac,* 773 F.Supp. at 145. In *Allen,* the court stated that to marshall and collect an asset, the failed bank must possess the asset and the bank did not own as an asset a directors' and officers' Policy without a regulatory exclusion. *Allen,* 710 F.Supp. at 1099–1100.

**10.** The Buena Vista Bank paid a premium of $2,491.00 in exchange for ACC's agreement to provide a one million dollar aggregate limit of liability coverage for the benefit of the directors and officers of the bank while excluding coverage in certain instances, including claims brought by or on behalf of the FDIC.

5-107, 4B C.R.S. (1987). However, recovery of any judgment obtained from such a claim would be limited to the assets of the individual directors.

Absent an express statutory requirement or legislative pronouncement by the General Assembly to the contrary, we should not now hold that directors' and officers' liability insurance policies issued to state-chartered banks containing regulatory exclusions are the type of contracts which are prohibited by the public policy of Colorado. Accordingly, I dissent from section III of the majority opinion and would affirm the court of appeals decision.

I am authorized to say that Chief Justice ROVIRA and Justice LOHR join in this concurrence and dissent.